IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO PAVONE, KAREN PAVONE, and M.P., a minor child, by and through his Parents and Next Friends Antonio Pavone and Karen Pavone, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 15 C 1539 |
| v. | ) ) | |
| MEYERKORD & MEYERKORD, LLC, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Meyerkord & Meyerkord, LLC's ("Meyerkord's" or "Defendant's") motion to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (R.15, Defs.' Mot. to Dismiss.) Specifically, Defendant alleges that Plaintiffs have failed to satisfactorily plead a violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* ("DPPA"). For the reasons set forth below, the Court grants Defendant's motion and dismisses Plaintiffs' Amended Complaint without prejudice.

### BACKGROUND

Plaintiffs Antonio Pavone, Karen Pavone, and their minor child, M.P., (the "Pavones" or "Plaintiffs") filed this class action lawsuit pursuant to the DPPA. (R.4, ¶¶ 1, 6, 7.)[1] The Pavones

---

[1] The Pavones are natural persons residing in this District and Defendant, Meyerkord & Meyerkord, LLC is a law firm, Missouri LLC with a principal place of business located in St. Louis,

plead a single claim for relief, seeking redress for injuries—suffered by themselves and others similarly situated—allegedly caused by Defendant improperly obtaining, using, and disclosing personal information contained in a motor vehicle record in an effort to solicit legal business and advertise services. (*Id.*, ¶ 1.)

The Pavones were in an automobile collision on the afternoon of January 15, 2015. (*Id.*, ¶ 8.) The Schaumburg Police Department was alerted and the responding officer created an Illinois Traffic Crash Report (the "Report"). (*Id.*; R.4-1, attached to the Amended Complaint as Exhibit A, Correspondence from Meyerkord to the Pavones, including the Report.) The Report contained the name, home address, telephone number, date of birth, and sex for each of the Pavones. (R.4, ¶¶ 10-12; R.4-1.) The following day, Defendant, a law firm with principal attorneys licensed to practice in Illinois, sent a parcel to each of the Pavones at their home address. (R.4, ¶ 20.) The parcels included an unredacted copy of the Report and correspondence on letterhead from "Meyerkord & Meyerkord LLC", clearly marked "ADVERTISING MATERIAL". (*Id.*, ¶ 21; R.4-1.) Upon receiving the parcels from Defendant, the Pavones became concerned that Defendant had obtained the Report and the personal information it contained, including information related to M.P., a minor child, and used that information for solicitation of legal representation. (R.4, ¶¶ 23-24.)

The Pavones allege that Defendant "knowingly obtained a copy of the Report from the Schaumburg Police Department, and/or the Illinois Secretary of State directly and/or through a private entity supplier" of Illinois Traffic Crash Reports. (*Id.*, ¶ 13.) Additionally, the Pavones allege that Defendant obtains records, such as Illinois Traffic Crash Reports, on a daily basis in

---

Missouri. (R.4, ¶¶ 6, 7.) Defendant's registered agent, Stephen Meyerkord, lives in St. Louis, Missouri and he and Geoffrey Meyerkord are principal attorneys at Meyerkord & Meyerkord and both licensed to practice law in Illinois. (*Id.*, ¶ 7.) The Court has original jurisdiction over this action arising under the DPPA, pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. §§ 1331 and 1337.

order to mail advertisements to persons involved in car accidents in order to advertise legal services and solicit potential clientele. (*Id.*, ¶¶ 14, 19.) The allegations provide that Defendant obtains Illinois Traffic Crash Reports in bulk for a fee, without knowing the names and addresses of the persons identified in the reports. (*Id.*, ¶ 15.) The Pavones bring this lawsuit as a class action and identify an alleged class of natural persons residing within Cook County, Illinois and the State of Illinois within the last four years to whom Defendant sent "ADVERTISING MATERIAL" parcels substantially similar in form to the parcels sent to the Pavones—i.e., including Illinois Traffic Crash Reports. (*Id.*, ¶ 26.) Specifically, the Pavones allege that Defendant violated Sections 2722(a) and (b) of the DPPA when it knowingly obtained the Pavones' information from the Report and used it for an unlawful purpose. (*Id.*, ¶¶ 33, 34.)

## LEGAL STANDARD

Defendant moves to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). *See* R.10. "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true," *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014). "[T]he complaint must supply 'enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include 'enough details about the subject-matter of the case to present a story that holds together.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014) (citations omitted). A plaintiff's pleading burden "should be commensurate with the amount of information available" to him. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015).

## ANALYSIS

The DPPA "regulates the disclosure of personal information contained in the records of state motor vehicle departments." *Maracich v. Spears*, ___ U.S. ___, 133 S.Ct. 2191, 2195, 166 L.Ed.2d 275 (2013); *see also Reno v. Condon*, 528 U.S. 141, 143, 120 S.Ct. 666, 668, 145 L.Ed.2d 587 (2000); 18 U.S.C. §§ 2721-2725. The DPPA's general prohibition provides injured parties with a private right of action, and states:

> A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity: (1) personal information … about any individual obtained by the department in connection with a motor vehicle record.

18 U.S.C. § 2721(a)(1); *see also Maracich*, 133 S.Ct. at 2195 ("[t]he DPPA regulates the disclosure of personal information contained in the records of state motor vehicle departments"); *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 939 (7th Cir. 2015). The intent of the DPPA, as taught by the legislative history, "is simple—to protect the personal privacy and safety of all American licensed drivers." *Dahlstrom*, 777 F.3d at 944; *see also Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009) ("Congress passed the DPPA in response to safety and privacy concerns stemming from the ready availability of personal information contained in state motor

4

vehicle records"); *Senne v. Vill. of Palatine, Ill.*, 784 F.3d 444, 448 (7th Cir. 2015). Although not as "fundamental as the [DPPA's] public safety objectives", the DPPA was also enacted "to protect against 'the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation.'" *Dahlstrom*, 777 F.3d at 944 (*citing Maracich*, 133 S.Ct. at 2198).

The Pavones allege that Defendant violated Section 2722 of the DPPA, which provides:

(a) Procurement for Unlawful Purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721 (b) of this title.

(b) False Representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722. Specifically, the Pavones allege that Defendant obtained and used their personal information from a motor vehicle record for the advertising of legal services and for solicitation of new potential clients, in violation of the DPPA. (*See* R.18, at 4 (*citing Maracich*, 133 S.Ct. at 2195-96).)

Defendant moves to dismiss the Pavones' Amended Complaint with prejudice arguing that they fail to allege facts supporting the required elements that (1) Defendant knowingly obtained, disclosed, or used personal information, (2) from a motor vehicle record, and (3) for a purpose not permitted under the DPPA. (*See* R.15, at 4 (*citing* 18 U.S.C. § 2724(a)).) The Court addresses each argument herein.

I. **Plaintiffs Have Adequately Pled that Defendant Knowingly Obtained "Personal Information"**

The DPPA proscribes knowingly obtaining or disclosing "personal information" from motor vehicle records. *Dahlstrom*, 777 F.3d at 942 (*citing* 18 U.S.C. § 2722(a)). The DPPA defines "personal information" as:

5

> [I]nformation that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

18 U.S.C. § 2725(3). The DPPA explicitly references and includes "name" and "address" as "personal information." *Id.* The Supreme Court and the Seventh Circuit refer to the "personal information" under the DPPA as including an individual's name and address. *See Maracich*, 133 S.Ct. at 2198 (*citing Reno*, 528 U.S. at 143) (emphasis added) (explaining that state departments of motor vehicles ("DMVs"), as a general rule, "require an individual to disclose detailed personal information, including *name, home address*, telephone number, Social Security number, and medical information" when obtaining a driver's license or registering a vehicle); *see also e.g., Senne*, 695 F.3d at 608 (emphasis added) (referring to "personal information" under the DPPA as including"[plaintiff's] full *name*, *address*, driver's license number, date of birth, sex, height, and weight"); *Graczyk v. West Pub Co.*, 660 F.3d 275, 277 (7th Cir. 2011) (emphasis added) ("State DMVs require drivers to supply sensitive personal information such as *names*, *addresses*, and social security numbers when applying for a driver's license). Accordingly, the scope of "personal information" includes, among other things, names and addresses.

Defendant asserts that the Illinois Traffic Crash Report, upon which the Pavones' claims rely, constitutes information on a vehicular accident and therefore the DPPA does not protect it. (*See* R.15, at 4.) Defendant's characterization of the Report fails, however, as it attempts to broadly classify the Report as a whole rather than recognize the different types of information contained within the Report. Indeed, the DPPA protects types of "information", not types of reports. *See e.g., Maracich*, 133 S.Ct. at 2198; *Pavone, et al. v. Law Offices of Anthony Mancini, Ltd.*, No. 15 C 1538, 2015 WL 4554844, at *1 (N.D. Ill. July 28, 2015) ("[b]ased on the plain

6

language of the statute, the exclusion refers to information about the accident, not the personal information that is included in accident reports"). The Pavones allege that Defendant's violation of the DPPA stemmed from obtaining and using their names and address—not obtaining the information related to the accident (e.g., vehicles involved, road conditions, times of day, etc).[2] While Defendant is correct that "personal information", as defined by the DPPA, "does not include information on vehicular accidents," this argument is not dispositive of the Pavones' claim. The Report at issue includes information that meets the DPPA's definition of "personal information", e.g., names, addresses, in addition to the car accident information that does not meet the definition. Indeed, Defendant described the Report as providing details that meet both classifications of information—personal information and information on vehicular accidents. (*See* R.15, at 4 (referring to the Report as detailing "among other things: the date and time of the accident, the make, model, and year of each vehicle involved in the accident; the *name*, *address*, date of birth, and sex of each driver and passenger involved in the accident; and a short narrative stating that two cars were involved in a rear-end collision and each driver's statement regarding the cause of the collision") (emphasis added)).

Defendant's additional argument regarding the lack of confidentiality requirements for accident reports under Illinois law is irrelevant. Specifically, Defendant argues that Illinois law mandates traffic accident reports "shall not be held confidential by the reporting law enforcement officer or agency." (*See* R.15 (*citing* 625 ILCS 5/11-408).) Defendant contends that the reports are not only non-confidential, but that under Illinois law, "[s]tate law enforcement agencies or law enforcement agencies of local authorities may furnish copies of traffic accident reports

---

[2] Plaintiffs' allegation regarding Mr. Pavone's "personal information" refers to his driver identification number in addition to his name, address, telephone number, date of birth, and gender. (*See* R.4, ¶ 10.) Plaintiffs' allegations regarding Ms. Pavone's and M.P.'s "personal information" refer only to their individual name, address, telephone number, date of birth, and gender. (*Id.*, ¶¶ 11, 12.)

7

prepared by such agencies" for a fee. (*Id.* (*citing* 625 ILCS 5/11/416).) Plaintiffs argue that the reports are indeed confidential, as specified by Section 412 of the Illinois Vehicle Code entitled "Motor Vehicle accident reports confidential". The parties' disagreement, however, is not relevant to whether the Pavones' names and addresses constitute "personal information" as defined by Section 2725(3) of the DPPA.[3]

Because the Pavones' allegations regarding Defendant's use of the Pavones' names and addresses constitutes "personal information" as defined by the DPPA, Plaintiffs have sufficiently pled this issue in their Amended Complaint.

## II. The Motor Vehicle Operations or Public Safety Exception Does Not Shelter Defendant's Solicitation of Prospective Clients

The DPPA's general prohibition against disclosure of personal information is tempered, by, among other things, various statutory exceptions listing permissible use by a government agency when carrying out its functions. *See* 18 U.S.C. § 2721(b); *see also Maracich*, 133 S.Ct. at 2195 (*citing* 18 U.S.C. §§ 2721(b)(1)-(14)) ("[d]isclosure of personal information is prohibited unless for a purpose permitted by an exception listed in 1 of 14 statutory subsections"); *see Pavone*, 2015 WL 4554844, at *3 (*citing Graczyk v. W. Pub. Co.*, 660 F.3d 275, 279 (7th Cir. 2011) ("[w]hat is apparent from considering the DPPA as a whole is that it is concerned with the ultimate use or uses to which personal information contained in the motor vehicle records is put").

---

[3] Defendant's reliance on *Mattivi v. Russell* for whether the Report contains "personal information" is similarly misplaced. No. Civ. A. 01-WM-533 (BNB), 2002 WL 31949898 (D. Colo. Aug. 2, 2002). No dispute existed in *Mattivi* regarding the disclosure of the plaintiff's name and address, as the plaintiff conceded the name and address were public information. *Id.*, at *2, n. 1.

Defendant argues that the last enumerated exception to disclosure of personal information, Section 2721(b)(14), applies here. Namely, Defendant asserts that the Pavones' personal information may be disclosed for the following permissible use:

> (14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

18 U.S.C. § 2721(b)(14). Defendant argues that under Illinois law, Illinois Traffic Crash Reports, such as the Report at issue here, "shall not be held confidential by the reporting law enforcement officer or agency." 625 ILCS 5/11-408. Further, Defendant argues, under Illinois law "[s]tate law enforcement agencies or law enforcement agencies of local authorities may furnish copies of traffic accident reports prepared by such agencies and may receive a fee not to exceed $5 for each copy." 625 ILCS 5/11-416. It is unnecessary, however, for the Court to determine whether the alleged basis in Illinois law satisfies the exemption requirements of Section 2721(b)(14) because the facts, as alleged, make it clear that Defendant's use of the personal information was not "related to the operation of a motor vehicle or public safety" as required under Section 2721(b)(14). In particular, the Pavones allege that Defendant obtained their personal information "in order to mail advertisements to persons involved in car accidents in order to advertise its legal services to such persons and to solicit new potential clients." (R.4, ¶ 14; *see also id.*, ¶¶ 19-21; R.4-1, attached to the Amended Complaint as Exhibit A, Correspondence from Meyerkord to the Pavones, including the Report.) Solicitation and advertising are not "related to the operation of a motor vehicle or public safety". *See Pavone*, 2015 WL 4554844, at *3 (finding use of crash reports to solicit business unrelated to the operation of a motor vehicle).

Plaintiffs, citing *Maracich*, argue that the Supreme Court has explicitly rejected the notion that a lawyer's solicitation of a prospective client is a permissible use under the DPPA. (R.18, at 13-14 (*citing Maracich,* 133 S.Ct. 2191).) The Supreme Court's decision in *Maracich*, however, does not sweep as broadly as the Pavones assert. In *Maracich*, the Supreme Court addressed the DPPA's litigation exception in Section 2721(b)(4) which provides that information may be disclosed:

> [f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service or process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

18 U.S.C. § 2721(b)(4); *Maracich*, 133 S.Ct. at 2199. Defendant does not argue that the litigation exception in Section 2721(b)(4) applies here. Defendant, instead, argues that the exception in Section 2721(b)(14) is applicable, and *Maracich* does not directly address this section. *See generally,* 133 S.Ct. 2191. *Maracich* does, however, address an exception that is relevant here, Section 2721(b)(12)—the solicitation exception—which provides that certain personal information may be disclosed:

> [f]or bulk distribution for surveys, marketing, or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

18 U.S.C. § 2721(b)(12); *Maracich*, 133 S.Ct. at 2199, 2203. Indeed, the presence of the solicitation exception highlights the different uses intended by the exceptions in Section 2721 (b)(14) and (b)(12)—one for use related to motor vehicle operation and public safety and the other for use in marketing and solicitations. In addition, the solicitation exception explicitly requires obtaining express consent of the individual to whom the information pertains. Plaintiffs have not alleged, nor does Defendant argue, that Defendant obtained the Pavones' express

consent to use their personal information. As the Supreme Court noted in *Maracich*, "Congress was aware that personal information from motor vehicle records could be used for solicitation, and it permitted it in circumstances that it defined, with the specific safeguard of consent by the person contacted." *Id.*, 133 S.Ct. at 2203. The Supreme Court further noted that reading the litigation exception of Section 2721(b)(4) to allow solicitation without consent would compromise the structure of the DPPA "to a serious degree." *Id.* Similarly here, to read the motor vehicle operations or public safety exception of Section 2721(b)(14) to allow solicitation without consent would compromise the structure of the DPPA and the purpose of the exception set forth in Section 2721(b)(12). The Court, therefore, declines to expand the exception relied on by Defendant to include solicitation and advertising. Because the exception does not apply, Defendant's motion to dismiss on this basis is denied.

### III. Plaintiffs Have Not Adequately Pled that Defendant Obtained Personal Information from a "Motor Vehicle Record"

Defendant also seeks to dismiss Plaintiffs' claim for failure to plead that Defendant obtained the personal information from a "motor vehicle record." *See Dahlstrom*, 777 F.3d at 942 (*citing* 18 U.S.C. § 2722(a)) (explaining that the DPPA proscribes knowingly obtaining or disclosing personal information from a "motor vehicle record"). The DPPA prohibits disclosure of personal information "from a single, isolated source"—a "motor vehicle record". *See Dahlstrom*, 777 F.3d at 949 ("The DPPA proscribes only the publication of personal information that has been obtained from motor vehicle records. The origin of the information is thus crucial to the illegality of its publication—the status is agnostic to the dissemination of the very same information acquired from a lawful source"); *see also* 18 U.S.C. § 2721(a)(1) (emphasis added) (prohibiting "State department of motor vehicles, and any officer, employee, or contractor thereof" from disclosing personal information *in a motor vehicle record*); 18 U.S.C. § 2722(a)

11

(emphasis added) (making it unlawful for "any person knowingly to obtain or disclose personal information, *from a motor vehicle record*, for any use not permitted under section 2721(b) of this title"). The DPPA defines "motor vehicle record" as:

> [A]ny record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles;

18 U.S.C. § 2725(1).

Plaintiffs do not argue that the Report is itself a motor vehicle record, but argue that the Report meets the definition of a motor vehicle record because it "*pertains* to Plaintiffs' car title, registration *and* driver's licenses." (*See* R.18, at 2 (emphasis in original); *id.*, at 9-13.) Plaintiffs further contend that the relevant information was "originally 'issued' by the [DMV], as no other source could originate certain information present on the report, such as Plaintiff's driver's license numbers and license plate number." (*Id.*) The Seventh Circuit teaches that "pertains to" as used in the DPPA's definition of "motor vehicle record" means "to belong as a part, member, accessory, or product". *See Lake*, 585 F.3d at 1061. The Report is a redacted copy of an Illinois Traffic Crash Report created by an officer from the Schaumburg Police Department. (*See* R.4, ¶¶ 8-22; R.4-1, at 4 (noting the "Investigating Agency" as the "Schaumburg Police Dept").) The unredacted portions of the Report note "Pavone, Antonio" as the driver and owner of the Unit 2 vehicle and "Karen Pavone" and "M.P." as passengers and witnesses. (*Id.*) The address, driver's license number, date of birth, and gender for Antonio Pavone, as well as the license plate number and VIN number for the Pavone's vehicle are all redacted in the Report attached to the Amended Complaint. (*Id.*) The only information relevant to Ms. Pavone and M.P., beyond their names—addresses, date of birth, and gender—is also redacted. (*Id.*) There are no factual allegations to establish or support a reasonable inference that the information in the Report or the Report itself

*pertains to* Plaintiffs' car title, registration, or driver's license. Although the Report includes personal information of the Pavones and refers to—albeit redacted—Mr. Pavone's drivers' license number, the Report is not "part of," nor is it a "member of," "accessory to," or "product of" an Illinois DMV-issued motor vehicle operator's permit, vehicle title, vehicle registration, or ID card. *See Lake*, 585 F.3d at 1061 (concluding that a voter registration form is not a part, member, accessory, or product of a motor vehicle operator's permit, even when filled out at the same time as an application for a driver's license); *Pavone*, 2015 WL 4554844, at *2 ("[a]n accident report is not a motor vehicle record, because it is not 'a part, member, accessory, or product of' any of the listed records").

The DPPA protects personal information that comes "*from* a motor vehicle record." 18 U.S.C. § 2722(a) (emphasis added). As such, "even if a document is created by the police, the DPPA protects any information in the report that the police obtained *from* the motor vehicle record." *See Pavone*, 2015 WL 4554844, at *2 (*citing Senne*, 695 F.3d at 599). Plaintiffs make a conclusory allegation that the Report "was created by the responding [Schaumburg Police Department] officer" and further allege that "Meyerkord knowingly obtained a copy of the Report from the Schaumburg Police Department, and/or Illinois Secretary of State directly and/or through a private entity supplier of such motor vehicle records as part of Meyerkord's regular practice and procedure of obtaining such records for advertising and solicitation purposes." (R.4, ¶¶ 8, 13.)[4] Defendant argues that this unsupported allegation written in the alternative renders the claim insufficient because if the information only came from local police departments or third parties, the DPPA does not prohibit its disclosure. The Court agrees.

---

[4] Plaintiffs' allegations that the Report "is a motor vehicle record as defined by the DPPA" (*see e.g.,* R.4, ¶¶ 1, 9, 13, 14, 18, 19) constitute legal conclusions which are not entitled to treatment as true when reviewing a motion to dismiss. *See Iqbal*, 556 U.S. at 681.

The Report is a completed version of Form SR-1050 Illinois Traffic Report. The Illinois Traffic Crash Report SR 1050, Instruction Manual for Law Enforcement Agencies (2013) ("Illinois Crash Report Manual")[5] contains the template of the SR-1050 Illinois Traffic Reports and indicates that an officer should enter the "LAST NAME, FIRST NAME, and MIDDLE INITIAL (M.I.)" for a person on the report and that "[i]f available, enter the name shown on the driver's license." (R.15-1, attached as Exhibit 1 to Def's Mot. to Dismiss, at 10.) To the extent that the Schaumburg Police Department received the Pavones' personal information verbally from the Pavones—a reasonable inference given they were at the scene of the accident—this would not constitute a violation of the DPPA. *See e.g., Dahlstrom*, 777 F.3d at 945 (emphasis added) (noting that the DPPA "permits publication of [personal information] so long as that information flows from a source other than driving records"). While information obtained from the Illinois Secretary of State would satisfy the pleading standard for Defendant committing a violation under the DPPA, if the information originated with the local police department or a private entity supplier, Defendant's actions to obtain Plaintiffs' personal information would not constitute a violation of the DPPA—absent additional allegations linking the DMV to a secondary act. *See e.g., Pavone*, 2015 WL 4554844, at *2 ("[t]he key question is whether the Illinois Secretary of State was the original source of the information"); *Whitaker v. Appriss, Inc.*, No. 3:13-CV-826-RLM-CAN, 2014 WL 4536559 (N.D. Ind. Sept. 11, 2014) (explaining that the parking ticket issued by the village police department in *Senne*, 695 F.3d at 609, "wasn't a motor

---

[5] Defendant submits the Illinois Crash Report SR 1050 Manual as Exhibit 1 to the memorandum in support of its motion to dismiss. Defendant requests that the Court take judicial notice of the Manual, and the Pavones do not object. The Court will do so because it may take judicial notice of matters within the public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *See Toney v .Quality Res., Inc.*, No. 13 CV 42, 2014 WL 6757978, at *8 (N.D. Ill. Dec. 1, 2014) (*citing Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493 (7th Cir. 2011)); *see also Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003) (explaining that government websites are proper items of which the court may take judicial notice)

vehicle record, but its disclosure of information derived from motor vehicle records could violate the DPPA"). The Pavones' Amended Complaint fails to allege facts connecting the personal information in the Report to the DMV to demonstrate that it was originally derived from a motor vehicle record. Rather, the allegation provides for alternative scenarios where the information was obtained from other sources, alternatives that effectively plead the Pavones out of court. *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008) ("a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims").

In a lengthy footnote in their response to Defendant's Motion to Dismiss, Plaintiffs assert that they "believe discovery will show that a reseller was used here and will also show that the standard operating procedure for police officers responding to traffic accidents … includes comparing information provided by the parties to the accident with information available to the officer from the Illinois Secretary of State's database via the officer's in-car computer." (*See* R.18, n.10.) Although additional information presented by the Pavones—regarding procurement of each of Plaintiffs' personal information originating with the DMV—would better track the factual basis necessary for a DPPA violation claim, the additional information provided in a footnote in Plaintiffs' Response does not suffice. *See e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.,* 631 F.3d 436, 448 (7th Cir. 2011) (the "rule that a plaintiff may not amend his complaint in his response brief" is "axiomatic"); *Friello v. Bank of New York*, No. 12 C 03270, 2012 WL4892856, at *9 (N.D. Ill. Oct. 5, 2012).

Furthermore, although it is true that a complaint is plausible if it contains facts that "raise a reasonable expectation that discovery will reveal evidence" supporting the allegations (*Twombly*, 550 U.S. at 556), it is also true that a plaintiff's pleading burden "should be commensurate with the amount of information available" to him. (*Olson*, 784 F.3d at 1100).

15

Plaintiffs were personally involved in the accident and present at the scene. As such, additional information regarding how the Schaumburg Police Department identified their personal information, e.g., from a discussion, from observation of Mr. and Ms. Pavone's driver's licenses or whether the officer checked a DMV database in his vehicle when filling out the Report, should be readily available to them. (*See* R.4, ¶ 8; R.4-1, at 4 (indicating the Report was completed "at the scene").) In addition, because the personal information allegedly disclosed in violation of the DPPA contains a minor child's name and address, any inference that M.P.'s personal information came from the department of motor vehicles is not reasonable.[6] *See Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Indeed, even Plaintiffs admit that "M.P.'s information most likely did not originate in state DMV records, although his parents['] information did." (*See* R.18, at 10, n.9.) Despite this admission, Plaintiffs nonetheless included M.P. as a plaintiff in this action.

Because the Pavones fail to allege facts that establish or support a reasonable inference that Defendant obtained Plaintiffs' personal information from a "motor vehicle record", the Court dismisses their DPPA claim without prejudice. The Court grants Plaintiffs leave to file a Second Amended Complaint on or before August 25, 2015.

---

[6] It is this same information that differentiates the situation here from the *Whitaker* case relied on by Plaintiffs. *See Whitaker v. Appriss, Inc.*, No. 3:13-CV-826-RLM-CAN, 2014 WL 4536559 (N.D. Ind. Sept. 11, 2014). The plaintiffs in *Whitaker* alleged that their personal information was obtained from their driver's licenses and vehicle title information—maintained by the Indiana Bureau of Motor Vehicles. 2014 WL 4536559, at *5. The district court drew a reasonable inference that the information was plausibly obtained from the state department of motor vehicles based on the allegations that detailed the defendant's relationship with the motor vehicle department as a supplier. *Id.* Here, the absence of any facts supporting the relationship between Defendant and the department of motor vehicles and the presence of additional facts involving the minor child makes that same inference much less plausible.

16

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss is granted and the Court dismisses the Pavones' Amended Complaint without prejudice.  The Court grants Plaintiffs leave to file a Second Amended Complaint on or before August 25, 2015.

**DATED:  August 4, 2015**  ENTERED

_____
AMY J. ST. EVE
United States District Court Judge