**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTONIO PAVONE, on behalf of himself, and all others similarly situated )<br><br>*Plaintiff,*<br><br>v.<br><br>MEYERKORD & MEYERKORD, LLC, a Missouri Limited Liability Company,<br><br>*Defendant.* | Case No. 1:15-cv-01539<br><br>Honorable Amy J. St. Eve |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Roger Zamparo, Jr.
Jordan M. Sartell
ZAMPARO LAW GROUP, P.C.
1600 Golf Road, Suite 1200
Rolling Meadows, IL 60008-4229
T. (224) 875-3202
F. (312) 276-4950
roger@zamparolaw.com
jordan@zamparolaw.com

James A. Francis
John Soumilas
FRANCIS & MAILMAN, P.C.
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
T. (215) 735-8600
F. (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

*Attorneys for Plaintiff and Classes*

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.    LEGAL STANDARD............................................................................................2

III.   FACTUAL BACKGROUND................................................................................2

IV.   ARGUMENT........................................................................................................3

        A.    Plaintiff's Second Amended Complaint Properly Pleads
That Defendant Knowingly Obtained His Personal Information
"From A Motor Vehicle Record" ...............................................................4

        B.    Defendant's Remaining Arguments Fail For The Same Basic
Reasons They Failed In Connection With Defendant's Original
Motion to Dismiss.....................................................................................10

V.    CONCLUSION...................................................................................................12

## **TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 2

*Best v. Berard*, 837 F. Supp. 2d 933 (N.D. Ill. 2011) ............................................................ 6, 8, 9

*City of Tallahasssee v. Federated Publications, Inc.*, 2012 WL 5407280 (N.D. Fla. Aug. 9, 2012) ................................................................................................................................... 11, 12

*Deicher v. City of Evansville, Wis.*, 545 F.3d 537 (7th Cir. 2008) ................................................ 6

*Fontanez v. Skepple*, 563 Fed. App'x 847 (2d Cir 2014) ........................................................... 7, 8

*Graczyk v. W. Publ'g Co.*, 660 F.3d 275 (7th Cir. 2011) ........................................................ 6, 11

*Lake v. Neal*, 585 F.3d 1059 (7th Cir. 2009) .............................................................................. 2, 4

*Maracich v. Spears*, 133 S. Ct. 2191 (2013) .................................................................................. 4

*Mattivi v. Russell*, 2002 WL 31949898 (D. Colo. Aug. 2, 2002) ............................................... 6, 7

*McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873 (7th Cir. 2012) ...................................... 2

*O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933 (N.D. Ill. 2002) ................................................ 7, 8

*Ocasio v. Riverbay Corp.*, 2007 WL 1771770 (S.D.N.Y. June 19, 2007) .................................. 7, 8

*Pavone, et al. v. Law Offices of Anthony Mancini Ltd.*, ___ F. Supp. 3d ___, 2015 WL 4554844 (N.D. Ill. July 28, 2015) ........................................................................................................ 7, 11

*Senne v. Village of Palatine, Ill.*, 695 F.3d 597 (7th Cir. 2012) ............................................ passim

*Whitaker v. Appriss, Inc.*, 2014 WL 4536559 (N.D. Ind. Sept. 11, 2014) ..................................... 6

## **STATUTES**

18 U.S.C. § 2721(b)(11) ............................................................................................................... 8

18 U.S.C. § 2721(b)(11)-(13) ....................................................................................................... 8

18 U.S.C. § 2721(b)(14) ............................................................................................................. 11

18 U.S.C. § 2721(b)(3) ................................................................................................................. 8

18 U.S.C. § 2721(c) ...................................................................................................................... 3

18 U.S.C. § 2722 ........................................................................................................................... 2

18 U.S.C. § 2722(a) .................................................................................................................. 3, 4

18 U.S.C. § 2725(1) ................................................................................................................... 4, 7

625 Ill. Comp. Stat. 5/6-112 ......................................................................................................... 9

## **RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 2

I.  **INTRODUCTION**

Plaintiff Antonio Pavone opposes Defendant Meyerkord & Meyerkord, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion"). In its Memorandum and Order dated August 4, 2015 (Dkt. No. 22), this Court found that Plaintiffs' original Amended Complaint failed to properly "allege facts that establish or support a reasonable inference that Defendant obtained Plaintiffs' personal information from a 'motor vehicle record' . . . ." *Id.* at p. 16. This Court thus dismissed Plaintiffs' claim under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725. *Id.* In the same decision, this Court analyzed all of Defendant's other arguments in support of its original motion to dismiss and found that Mr. Pavone had otherwise properly pled a DPPA claim. *Id.* at pp. 1-17. Specifically, this Court found that Mr. Pavone had properly pled that Defendant had knowingly obtained Plaintiff's "personal information," *id*. at pp. 5-8, and had done so for an impermissible purpose, *id.* at pp 8-10. This Court granted Plaintiffs leave to amend, and Mr. Pavone filed a Second Amended Complaint on August 24, 2015. Dkt. No. 23.

Now Defendant moves to dismiss Plaintiff's Second Amended Complaint making essentially the same arguments used to oppose the Amended Complaint, which were largely rejected by this Court. Defendant again argues that it had a permissible purpose, citing the same "public safety" purpose cited in its original motion to dismiss. Dkt. No. 26. at p. 13. This Court has already ruled, however, that the public safety exception does not shelter Defendant's solicitation of prospective clients. Dkt. No. 22 at p. 8. Defendant again argues that it was not obtaining "personal information," but only "accident information." Dkt. No. 26 at p. 11. This Court ruled against Defendant on that issue as well, finding that Defendant obtained Plaintiff's name and address (*i.e.*, personal information) in order to send him a solicitation. Dkt. No. 22 at

p. 5. Defendant also argues that the personal information at issue here allegedly did not come "from a motor vehicle record." But this argument also fails, as the Second Amended Complaint can only be read to mean that Plaintiff's name and address came to Defendant from a motor vehicle record, and not from Plaintiff's memory or any other source. The Motion lacks merit and should therefore be denied.

## II. LEGAL STANDARD

To defeat a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When evaluating a motion to dismiss, the court accepts the complaint's factual allegations as true and draws all possible inferences in the plaintiff's favor. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).

## III. FACTUAL BACKGROUND

Plaintiff brought this class action against Defendant, alleging that it violates DPPA section 2722 by improperly obtaining and using name and address information from motor vehicle records in order to send advertisements to solicit him and other potential clients. Plaintiff's factual allegations are set out in detail in his Second Amended Complaint, Dkt. No. 23, and are incorporated by reference herein.

The primary differences between the Amended Complaint and the Second Amended Complaint are at paragraphs 10 and 11, where Plaintiff explains how his personal information

2

came to be on the Traffic Crash Report that Defendant obtained and used to send him a solicitation:

> 10. At the responding officer's request, Mr. Pavone presented his driver's license to the officer who transferred certain information, including Mr. Pavone's name, driver identification number, home address, telephone number, date of birth, and gender, from Mr. Pavone's driver's license into an Illinois Traffic Crash Report (the "Report").
>
> 11. Upon information and belief, in accordance with standard policing procedure, the responding officer corroborated the information printed on Mr. Pavone's driver's license with the Illinois Secretary of State records for Mr. Pavone, which records were available to the officer via computer system in his vehicle.

Dk. 23 at ¶¶ 10-11. The Second Amended Complaint also explains that Defendant obtains unredacted Traffic Crash Reports in bulk from a private third party vendor (a "reseller" as used in the DPPA, *see* 18 U.S.C. § 2721(c)) for a fee without knowing the name and address of the subjects of the Traffic Crash Reports, and without their consent. Dkt. No. 23 at ¶¶ 13-15.

### IV. ARGUMENT

The DPPA prohibits persons and businesses such as Defendant from obtaining or disclosing "personal information" which comes "from" any record that the statute terms a "motor vehicle record" without one of the permitted purposes expressly set forth in the DPPA: "It shall be unlawful for any person knowingly to obtain or disclose *personal information*, *from* a *motor vehicle record*, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a) (emphasis added). *See, e.g., Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 607-08 (7th Cir. 2012) (outlining the DPPA's purposes and legislative history).

Plaintiff here alleges that Defendant obtained and used his personal information from a motor vehicle record for an impermissible purpose, because Defendant used that personal

3

information for the advertising of legal services and for the solicitations of new potential clients, which is prohibited by the DPPA. *Maracich v. Spears*, 133 S. Ct. 2191, 2195-96 (2013).

A.  **Plaintiff's Second Amended Complaint Properly Pleads That Defendant Knowingly Obtained His Personal Information "From A Motor Vehicle Record"**

The main thrust of Defendant's renewed motion to dismiss is that the Second Amended Complaint allegedly still does not plead that the personal information at issue (primarily Plaintiff's name and address) came "from a motor vehicle record." Dkt. No. 26 at pp. 5-10. This argument fails.

A "motor vehicle record" under the DPPA means "*any record* that *pertains* to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, *or* identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1) (emphasis added). Plaintiff here pleads a claim under DPPA section 2722, which provides that it shall be unlawful for any person knowingly to obtain or disclose "*personal information, from a motor vehicle record*" without a statutorily permitted purpose. 18 U.S.C. § 2722(a) (emphasis added).

To plead a violation of DPPA section 2722, therefore, a plaintiff must allege that his or her personal information was obtained from "any record" that "pertains" to "a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, *or* identification card issued by a department of motor vehicles." To "pertain" to a DMV record under the DPPA means "to belong as a part, member, accessory, or product." *Lake v. Neal*, 585 F.3d 1059, 1061 (7th Cir. 2009). Plaintiff's Second Amended Complaint properly pleads a violation of DPPA section 2722.

There is no question that the Second Amended Complaint pleads that Defendant used personal information (Mr. Pavone's name and address) to mail to him a solicitation (which is not a permitted purpose under the DPPA). The only question remaining is: where did that personal

4

information come from? The Second Amended Complaint provides the answer: it came from Plaintiff's driver's license and was corroborated through the use of police-accessible records from the Illinois Secretary of State, Illinois' Department of Motor Vehicles (DMV). Second Amended Complaint, Dkt. No. 23, at ¶¶ 10-11.

Plaintiff's name and address thus came "from" a "motor vehicle record" because the driver's license and DMV records here, accessible to the police in their vehicles, both come within the DPPA's broad definition of "motor vehicle record." Each is a "record" that "pertains" to Plaintiff's "permit, motor vehicle title, motor vehicle registration, *or* identification card issued by a department of motor vehicles." The Illinois DMV "issued" Plaintiff's driver's license, permit, title, and registration. Neither Plaintiff nor any other person could have "issued" those records.

Additionally, the personal information at issue here clearly came *from* "records" that are "part" or "accessory" or a "product" of the original state-issued DMV records according to the Second Amended Complaint. Dkt. No. 23 at ¶¶ 10-20. The personal information at issue here did not come from the phone book, or orally from Plaintiff's memory, or from an addressed envelope found by the police in Plaintiff's car. The police officer did not "Google" Plaintiff's identity. Rather, as the Second Amended Complaint pleads, the police officer requested Plaintiff's license and registration according to standard policing procedure. Dkt. No. 23 at ¶¶ 10-11. The only logical inference is that the officer copied personal information, including Plaintiff's name and address, onto the Traffic Crash Report from Plaintiff's driver's license or the DMV record accessible on the cruiser's computer. Thus, the personal information contained on the Traffic Crash Report came "from" a "motor vehicle record."

The reason for the broad definition of "motor vehicle record" in the DPPA is plain: if personal information from an auto title, registration card, or ID card is to be protected from improper disclosure, any derivative versions of that *information* must also be protected. Otherwise, any handwritten copy, cell phone photograph, or electronic reproduction of an original DMV record could be used to improperly disclose personal information with impunity.[1]

Defendant cites to a single Colorado trial court decision in continuing to argue that the Traffic Crash Report allegedly cannot constitute a motor vehicle record. Dkt. No. 26 at pp. 6-7 (citing to *Mattivi v. Russell*, No. Civ. A. 01-WM-533 (BNB), 2002 WL 31949898 (D. Colo. Aug. 2, 2002)). That District of Colorado trial court decision, however, is inapplicable and unpersuasive here for the same reasons it was distinguished in *Whitaker v. Appriss, Inc.*, Case No. 3:13-CV-826-RLM-CAN, 2014 WL 4536559, at *5 (N.D. Ind. Sept. 11, 2014).[2] The *Mattivi* Court, like Defendant here, seemed to assume that a *police record* was the *original DMV*

---

[1] There can be no doubt that the DPPA protects personal information "from a motor vehicle record" which is obtained or disclosed through a derivative record or intermediary communication. *See e.g.*, *Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 599 (7th Cir. 2012) (personal information on a parking ticket written by local police); *Deicher v. City of Evansville, Wis.*, 545 F.3d 537, 540 (7th Cir. 2008) (personal information disclosed verbally by police officer); *Best v. Berard*, 837 F. Supp. 2d 933, 935 (N.D. Ill. 2011) (personal information disclosed on reality television show). Further, the Seventh Circuit has found DPPA-regulated information can be housed within the database of a publishing company and thereafter resold to third party users so long as the "ultimate use or uses to which personal information contained in motor vehicle records is put" is permitted by the DPPA. *Graczyk v. W. Publ'g Co.*, 660 F.3d 275, 279 (7th Cir. 2011).

[2] *See Whitaker v. Appriss, Inc.*, Case No. 3:13-CV-826-RLM-CAN, 2014 WL 4536559 (N.D. Ind. Sept. 11, 2014). In *Whitaker*, the plaintiffs were involved in separate car accidents, and responding police officers completed an "Indiana Officer's Standard Crash Report" that included personal information about the plaintiffs. *Id.* at *2-3. Within a month of the accident, the plaintiffs received unsolicited letters from lawyers seeking to represent them in personal injury cases. *Id*. The plaintiffs then sued the information broker that sold the lawyers copies of their crash reports. *Id.* at *1. The defendant in *Whitaker* moved to dismiss on the basis that the accident report was not a "motor vehicle record" as defined under the DPPA. *Id*. The district court, citing the Seventh Circuit in *Senne*, denied that defendant's motion to dismiss, finding that the personal information at issue could be found to be "associated" with (*i.e.*, to pertain to) DPPA-protected records. *Id*. at *2. This Court should do the same.

*record*. *Mattivi*, 2002 WL 31949898, at *3 (emphasis added). But that is simply not what Plaintiff argues in the case at bar, or how the DPPA defines "motor vehicle record." A "motor vehicle record" can be "any record" (including a police record) that "pertains" to "motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1).[3]

In another virtually identical action brought by Plaintiff in this District, the court found that a plaintiff can set forth a cause of action under the DPPA for the improper disclosure and use of personal information stemming from a Traffic Crash Report. *Pavone, et al. v. Law Offices of Anthony Mancini Ltd.*, ___ F. Supp. 3d ___, 2015 WL 4554844, at *2 (N.D. Ill. July 28, 2015). This Court should come to the same result.

Defendant cites to several other non-binding decisions to argue that allegedly a "Driver's License Is Not a Motor Vehicle Record."[4] The decisions that Defendant relies upon involve situations where drivers *voluntarily* presented their driver's licenses to an employer or to a

---

[3] The Seventh Circuit also disagrees with the *Mattivi* court with respect to where the personal information was eventually disclosed—a newspaper. In *Senne*, the court noted that:

> *There is an argument for placing identifying information such as height and weight on a ticket placed face down under a windshield wiper, but it would be at once unnecessary and an offensive invasion of privacy to place that information in a newspaper, on a billboard, or on the police department's website.* The balance between law enforcement and privacy favors allowing discreet disclosure of limited information of credible value to law enforcement, since the potential harm of such disclosure is negligible but the benefits nonnegligible.

*Senne v. Village of Palatine, Illinois*, 784 F.3d 444, 448 (7th Cir. 2015) (emphasis added).

[4] *See* Dkt. No. 26 at pp. 7-8 (citing to *Fontanez v. Skepple*, 563 Fed. App'x 847 (2d Cir 2014); *Ocasio v. Riverbay Corp.*, No. 06-6455, 2007 WL 1771770, at *4 (S.D.N.Y. June 19, 2007); *O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933 (N.D. Ill. 2002)).

7

facility which required ID as a requirement of entrance to that facility.[5] None of those facility-entrance or employment-related circumstances are present in the case at bar.

The DPPA, of course, clearly provides that a consumer may give "consent" in several cases for his or her personal information to be disclosed, even from a motor vehicle record. 18 U.S.C. § 2721(b)(11)-(13). In this case, however, Plaintiff did not give any consent to Defendant, either to access his driver's license or the Traffic Crash Report, and Plaintiff did not seek entrance to Defendant's facilities, employment by Defendant, or indeed any interaction with Defendant whatsoever.

Nor did Plaintiff *voluntarily* disclose his driver's license information or any other DMV information that made its way onto the Traffic Crash Report *to anybody*; that information was requested by the police officer on the scene of the accident and corroborated with the Illinois Secretary of State, pursuant to standard police procedure.[6] This was in compliance with Illinois law:

---

[5] In *Fontanez* the court was narrow in its holding, noting that "the DPPA does not protect against the use of personal information obtained from a driver's license provided by the holder as proof of identity to gain access to a facility." 563 Fed. App'x at 848. The *O'Brien* court reached a similar result when a patron at a nightclub voluntarily disclosed his personal information in order to gain entrance to the club. 219 F. Supp. 2d at 934. In *Ocasio*, a driver's license was voluntarily disclosed to employer who sought to verify the identity of an employee, which is permissible under the DPPA at section 2721(b)(3) & (11). 2007 WL 1771770, at *4.

[6] Plaintiff believes that discovery will show that the standard operating procedure for police officers responding to traffic accidents—indeed traffic stops of any sort—includes comparing information provided by the parties to the accident with information available to the officer from the Illinois Secretary of State's database via the officer's in-car computer. Such a check is necessary to determine if any of the parties are, for instance, driving on a suspended license, subject to any outstanding arrest warrants, etc. Officers also check the status of the vehicles' registration and insurance against information available in the state DMV's database. *Best v. Berard* is instructive on how these practices intersect with the DPPA. *Best v. Berard*, 837 F. Supp. 2d 933 (N.D. Ill. 2011). In *Best*, the plaintiff's personal information, displayed on a police officer's in-car computer, was captured on camera pursuant to the filming of a reality television program. *Id*. at 937. The footage aired and the plaintiff's personal information was visible for a few moments during the program. *Id*. at 941. The court, finding that there was sufficient information in the record to indicate that the personal information came from state DMV records, denied

8

> Every licensee or permittee shall have his driver's license or permit in his immediate possession at all times when operating a motor vehicle and, for the purpose of indicating compliance with this requirement, *shall display such license or permit if it is in his possession upon demand made, when in uniform or displaying a badge or other sign of authority, by a member of the State Police, a sheriff or other police officer* or designated agent of the Secretary of State.
>
> \* \* \*
>
> For the purposes of this Section, "display" means the manual surrender of his license certificate into the hands of the demanding officer for his inspection thereof.

625 ILL. COMP. STAT. 5/6-112 (emphasis added). The Second Amended Complaint makes it clear that "[a]t the responding officer's request," Mr. Pavone presented his driver's license. Dkt. No. 23 at ¶ 10. That surrender, therefore, was not voluntary, but involuntary, essentially coerced by state law.

Defendant finally argues in one short paragraph that the DPPA allegedly does not apply to information that resides in the records of the Illinois Secretary of State. Dkt. No. 26 at p. 10. This position is without any support and should be rejected.

A DPPA claim survives summary judgment if personal information from the Secretary of State's electronic records available to an officer in his in-car computer is disclosed. *Best v. Berard*, 837 F. Supp. 2d 933 (N.D. Ill. 2011). In *Best*, the plaintiff's personal information, displayed on a police officer's in-car computer, was captured on camera pursuant to the filming of a reality television program. *Id*. at 937. The footage aired and the plaintiff's personal information was visible for a few moments during the program. *Id*. at 941. The court, finding that there was sufficient information in the record to indicate that the personal information came

---

summary judgment to defendant on the plaintiff's relevant DPPA claims. *Id*. at 943. Likewise, in keeping with standard policing procedures, the instant Plaintiff's personal information was undoubtedly corroborated with information obtained from the Illinois Secretary of State's database during the responding officer's generation of the traffic accident report.

9

from state DMV records, denied summary judgment to defendant on the plaintiff's relevant DPPA claims. *Id.* at 943.

Likewise, in keeping with standard policing procedures, Mr. Pavone's personal information was corroborated with information obtained from the Illinois Secretary of State's database during the responding officer's generation of the traffic accident report. Dkt. No. 23 at ¶ 11. It was because Plaintiff's name and address was not only on his driver's license but also within the DMV records from the Illinois Secretary of State that the police officer used that personal information on the Traffic Crash Report. Defendant provides this Court with no reason or authority to draw a distinction between information that is obtained from a motor vehicle record like Mr. Pavone's driver's license and the same information that is obtained from electronic state motor vehicle records available to the officer via his in-car computer.

Defendant's arguments all lack merit and its Motion should be denied.

**B.    Defendant's Remaining Arguments Fail For The Same Basic Reasons They Failed In Connection With Defendant's Original Motion to Dismiss**

Defendant argues, as it did in its original motion to dismiss, that it had a permissible purpose, citing the same "public safety" purpose. Dkt. No. 26. at p. 13. This Court has already ruled, however, that the public safety exception "does not shelter Defendant's solicitation or prospective clients." Dkt. No. 22 at p. 8.

Further, that issue simply cannot be resolved on a motion to dismiss. Plaintiff's Second Amended Complaint pleads nothing with respect to Defendant's purported "public safety" use for Traffic Crash Reports. The Second Amended Complaint instead pleads that Defendant used personal information from a motor vehicle record to make an impermissible solicitation. Dkt. No. 23 at ¶¶ 10-22 and Ex. A thereto. If Defendant wishes to defend this case by claiming that it

10

had a different purpose, that defense must be subject to discovery and its credibility may ultimately require a finding by a jury.

As the court observed in the related *Pavone, et al. v. Law Offices of Anthony Mancini Ltd.* case:

> Under the DPPA, the Court must consider the *ultimate user's* treatment of the personal information. *See Graczyk v. W. Pub. Co.*, 660 F.3d 275, 279 (7th Cir. 2011) ("What is apparent from considering the DPPA as a whole is that it is concerned with the ultimate use or uses to which personal information contained in motor vehicle records is put."). Thus, *each person* who obtains a motor vehicle record or discloses its contents must use the information for a permissible purpose. *See id.* at 280–81; *see also Senne [v. Village of Palatine]*, 695 F.3d at 606 ("[T]he actual information disclosed—i.e., the disclosure as it existed in fact—must be information that is used for the identified purpose. When a particular piece of disclosed information is not used to effectuate that purpose in any way, the exception provides no protection for the disclosing party.").

2015 4554844, at *3 (emphasis added). Based on the facts alleged in the Second Amended Complaint, Defendant's ultimate use of Mr. Pavone's personal information, namely solicitation for legal services, does not fall within the section 2721(b)(14) exception.

The nonbinding 2012 trial court decision from Florida that Defendant cites for the first time does not compel a different result. *See* Dkt. No. 26 at p. 14 (citing *City of Tallahasssee v. Federated Publications, Inc.*, 2012 WL 5407280 (N.D. Fla. Aug. 9, 2012)). In *City of Tallahassee*, a municipality sought a declaratory judgment on the issue of whether personal information contained in red light camera violation notices, documents sent only to the offending driver and not filed in a court proceeding unless the driver did not promptly pay the fine, were protected from disclosure by the DPPA. The court ruled that the DPPA did not prevent "unlimited disclosure of information once it has been *lawfully used* in a civil, criminal, administrative, or arbitral proceeding, or *for another lawful purpose* related to operating a motor vehicle or public safety." 2012 WL 5407280, at *3 (emphasis added). The State of Florida's

11

*lawful* purposes for using certain information from "red light camera violations" provide no defense here for Defendant's unlawful *solicitations* to persons it sees as potential clients.[7]

Defendant's other recycled argument is equally unavailing. Defendant already argued that it allegedly was not obtaining "personal information," but only "accident information." Dkt. No. 26 at p. 11 and essentially the same argument at Dkt. No. 15 at pp. 4-5. This Court, however, has already ruled against Defendant on that very issue as well, finding that the fact that Plaintiff's name and address (*i.e.*, personal information) was co-mingled with car accident information forms no basis to dismiss his DPPA claim. Dkt. No. 22 at p. 6-7.

In sum, Plaintiff has properly plead every element of a DPPA section 2722 violation.

---

[7] In the Seventh Circuit, the ultimate use to which DPPA-protected personal information is put is determinative. Addressing one of the permissible use exceptions addressed in *City of Tallahassee*, the court noted as follows:

> While authorizing disclosure of personal information "for use in connection with any … administrative … proceeding," the [DPPA] doesn't define "use." But the "for" in front of "use" is a compelling clue to its meaning. Suppose you buy an umbrella. And someone not too intelligent asks you: "why did you buy an umbrella?" And you answer "for use when it rains." Now it may be that you live in a dry climate, where it rarely rains. Maybe eventually you discard the umbrella, never having used it. And yet you had bought it "for use" in shielding you from rain rather than to just sit in your umbrella stand. And similarly the personal information collected by the Palatine police department that we discussed was "for use" in connection with the department's duties, whether or not each item of information, such as Senne's address, would ever be used.

*Senne v. Village of Palatine, Ill.*, 784 F.3d 444, 447-48 (7th Cir. 2015). Defendant asks this Court to believe that its response to the *Senne* court's query, "why did you buy Mr. Pavone's Traffic Crash Report?" is "To inform him and his family members of important tips on how to negotiate with car insurers." Such a conclusion is at odds with the character and nature of Defendant's solicitation taken as a whole and should be rejected. *See* Dkt. No. 23, Ex. A. Defendant's obtainment of Mr. Pavone's personal information was "for use" in soliciting him for legal services. As such, in the Seventh Circuit, whether another entity could have used the information pursuant to another exception is immaterial.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint should be denied.

DATED: October 2, 2015

Respectfully submitted,

By: */s/Jordan M. Sartell*

Roger Zamparo, Jr.
Jordan M. Sartell
ZAMPARO LAW GROUP, P.C.
2300 Barrington Road, Suite 140
Hoffman Estates, IL 60169
T. (224) 875-3202
F. (312) 276-4950

James A. Francis*
John Soumilas*
FRANCIS & MAILMAN, P.C.
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
T. (215) 735-8600
F. (215) 940-8000

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff and Classes*

13

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on this day, the foregoing was filed electronically through the CM/ECF system with the Clerk of the Court for the United States District Court for the Northern District of Illinois, Eastern Division, and was served upon all counsel of record.

Dated:  October 2, 2015                              */s/Jordan M. Sartell*
                                                                                              Jordan M. Sartell