**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTONIO PAVONE, on behalf of himself, and all others similarly situated, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>MEYERKORD & MEYERKORD, LLC, a )<br>Missouri Limited Liability Company, )<br>LEXISNEXIS RISK SOLUTIONS, INC., a )<br>Corporation; and IYETEK, LLC, a Limited )<br>Liability Company, )<br>)<br>*Defendants.* ) | Case No. 1:15-cv-01539<br><br>Honorable Amy J. St. Eve |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT FOR RELIEF**

| | |
|---|---|
| Roger Zamparo, Jr.<br>Jordan M. Sartell<br>ZAMPARO LAW GROUP, P.C.<br>2300 Barrington Rd., Ste. 140<br>Hoffman Estates, IL 60169<br>T: (224) 875-3202<br>F: (312) 276-4950<br>roger@zamparolaw.com<br>jordan@zamparolaw.com | James A. Francis<br>John Soumilas<br>FRANCIS & MAILMAN, P.C.<br>100 S. Broad Street, 19th Floor<br>Philadelphia, PA 19110<br>T. (215) 735-8600<br>F. (215) 940-8000<br>jfrancis@consumerlawfirm.com<br>jsoumilas@consumerlawfirm.com |

*Attorneys for Plaintiff and Classes*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. LEGAL STANDARD .........................................................................................................2

III. FACTUAL BACKGROUND ..............................................................................................2

IV. ARGUMENT .......................................................................................................................3

    A. Plaintiff Has Properly Plead A Violation Of The Fair Credit Reporting Act ..........3

        1. Plaintiff Twice Requested A Copy Of His File From Lexis, An Acknowledged Consumer Reporting Agency, But Received No Response, In Violation Of FCRA Section 1681g(a) ..................................................................3

        2. Lexis Must Disclose *All* Information It Maintains And Sells About Consumers Upon Request, Regardless Of Creative Corporate Structure ...........................................................4

            a. Plaintiff Requested Information, Not The Crash Report ..........................4

            b. Lexis Cannot Avoid Disclosure By Reclassifying Mr. Pavone's Personal Information As "Accident Data" ..........................5

    B. Plaintiff Has Properly Plead a Violation Of The Drivers Privacy Protection Act .................................................................................................7

        1. The Sale Of Personal Information For Advertising Purposes Serves No Law Enforcement Purpose ............................................7

        2. This Court Has Already Ruled That The "Vehicular Accident" Exclusion Does Not Apply To Mr. Pavone's Personal Information And The Transaction Here ........................................................8

V. CONCLUSION ..................................................................................................................10

i

# **TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 2

*Boris v. ChoicePoint Services, Inc.*,
  249 F. Supp. 2d 851 (W.D. Ky. 2003) .................................................................................. 3, 4

*Campos v. ChoicePoint, Inc.*,
  237 F.R.D. 478 (N.D. Ga. 2006) ............................................................................................... 3

*City of Chicago v. U.S. Dep't of the Treasury*,
  423 F.3d 777 (7th Cir. 2005)................................................................................................... 10

*Lake v. Neal*,
  585 F.3d 1059 (7th Cir. 2009)................................................................................................... 2

*Maracich v. Spears*,
  133 S. Ct. 2191 (2013) .............................................................................................................. 7

*McReynolds v. Merrill Lynch & Co., Inc.*,
  694 F.3d 873 (7th Cir. 2012)..................................................................................................... 2

*Moreland v. CoreLogic SafeRent LLC*,
  No. 13-cv-470, 2013 WL 5811357 (C.D. Cal. Oct. 25, 2013) .................................................. 4

*Pavone v. Meyerkord & Meyerkord, LLC*,
  118 F. Supp. 3d 1046 (N.D. Ill. 2015) ...................................................................................... 8

*Senne v. Village of Palatine, Illinois*,
  695 F.3d 597 (7th Cir. 2012)..................................................................................................... 9

*Smith v. LexisNexis Risk Solutions, Inc.*,
  No. 12-cv-9972, 2014 WL 866413 (N.D. Ill. Mar. 5, 2014) ..................................................... 3

*Williams v. LexisNexis Risk Mgmt. Inc.*,
  No. 3:06-cv-241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) ............................................... 3

**STATUTES**

12 C.F.R. § 1022.140 ...................................................................................................................... 6

15 U.S.C. § 1681a(p) ................................................................................................................. 5, 6

15 U.S.C. § 1681g(a) .............................................................................................................. 1, 3, 4

15 U.S.C. § 1681x............................................................................................................................ 6

18 U.S.C. § 2722........................................................................................................................ 2, 8

**RULES**

Fed. R. Civ. P. 12(b)(6).................................................................................................................. 2

Plaintiff Antonio Pavone ("Mr. Pavone" or "Plaintiff") hereby opposes the Motion to Dismiss Plaintiff's Third Amended Complaint for Relief filed by Defendants LexisNexis Risk Solutions, Inc. ("Lexis") and iyeTek, LLC ("iyeTek") (collectively "Defendants").

## I. INTRODUCTION

Mr. Pavone claims in his Third Amended Complaint that Lexis violated section 1681g of the Fair Credit Reporting Act ("FCRA") because he requested his "file" from Lexis and Lexis sent him nothing in response. Lexis is a well-known consumer reporting agency ("CRA"), and Plaintiff made two proper "requests" for his file on May 5, 2015 and again on September 16, 2015. Plaintiff has thus stated a claim under FCRA section 1681g. Defendant claims that it did not need to give Plaintiff information stemming from his Crash Report because that is not a "consumer report." Defendant is mistaken, because a CRA cannot lawfully maintain a different database to shield disclosure to consumers of *some of the information* it maintains about them. At this stage, however, that issue need not even be addressed, because there is no question that Lexis is a CRA, had at least some information about Mr. Pavone (his name, address, the car he drives, his accident history, etc.) in its file, and failed to respond to Plaintiff's file requests in any way on two separate occasions.

Mr. Pavone also claims that both iyeTek and its successor Lexis violated section 2722 of the Driver's Privacy Protection Act ("DPPA") when they sold personal information about him from a motor vehicle record to the Meyerkord & Meyerkord law firm to be used for an impermissible purpose, namely advertising. Defendants state that they had a permissible purpose in assisting the Schaumburg Police Department prepare a Crash Report about Plaintiff. That may be so, but that is not the claim that Plaintiff brings. A defendant who may have a permissible purpose to obtain DPPA-protected personal information for one transaction still violates the DPPA

1

when it obtains or uses that information improperly in another transaction. The relevant transaction here (and Plaintiff's only DPPA claim) is that on January 15 or 16, 2015 Defendants sold Mr. Pavone's personal information from a motor vehicle record to a law firm for advertising purposes. Further, this Court has already determined that the "accident information" exception on which Defendants rely does not apply to this case. Accordingly, Mr. Pavone has also properly plead his DPPA claim, and Defendants' motion to dismiss must be denied.

## II. LEGAL STANDARD

To defeat a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When evaluating a motion to dismiss, the court accepts the complaint's factual allegations as true and draws all possible inferences in the plaintiff's favor. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).

## III. FACTUAL BACKGROUND

Plaintiff brought this class action against Defendant Meyerkord & Meyerkord LLP ("Meyerkord & Meyerkord"), alleging that it violates DPPA section 2722 by improperly obtaining and using name and address information from a motor vehicle record in order to send advertisements to solicit him and other potential clients. *See* Second Amended Complaint, Dkt. No. 23. Upon learning that two private entities were involved in the sale of Plaintiff's personal information, he sought and was granted leave to file an amended complaint adding them as defendants. Dkt. Nos. 47-48. Plaintiff's factual allegations against these new entities, Defendants

Lexis and iyeTek, are set out in detail in his Third Amended Complaint Dkt. No. 49 ("TAC"), and are incorporated by reference herein.

## IV. ARGUMENT

### A. Plaintiff Has Properly Plead A Violation Of The Fair Credit Reporting Act

#### 1. Plaintiff Twice Requested A Copy Of His File From Lexis, An Acknowledged Consumer Reporting Agency, But Received No Response, In Violation Of FCRA Section 1681g(a)

Lexis is a CRA according to the Third Amended Complaint. TAC ¶¶ 34-37. There can be no serious question that Lexis holds itself out as a CRA on its website. *See* https://personalreports.lexisnexis.com/fact_act_disclosure.jsp ("LexisNexis® Risk Solutions has a company that maintains consumer files that are subject to the free disclosure requirement" under the FCRA); https://personalreports.lexisnexis.com/index.jsp ("Access your personal information that LexisNexis® Risk Solutions maintains in our files."). Nor can there be any question that numerous courts have found Lexis and its predecessor entities to be a CRA.[1]

The FCRA requires every CRA to "upon request . . . clearly and accurately disclose to the consumer: (1) All information in the consumer's file . . . ." 15 U.S.C. § 1681g(a). Mr. Pavone claims that Lexis has "37 billion public and proprietary records." TAC ¶ 35. Plaintiff also claims that Lexis has, at a bare minimum, information about his name, address, car, and accident history.

---

[1] *Smith v. LexisNexis Risk Solutions, Inc.*, No. 12-cv-9972, 2014 WL 866413 at *1, 3 (N.D. Ill. Mar. 5, 2014) (noting that Lexis holds itself out as a CRA on its website and finding that the plaintiff stated a claim for a violation of the FCRA); *Williams v. LexisNexis Risk Mgmt. Inc.*, No. 3:06-cv-241, 2007 WL 2439463, at *2 (E.D. Va. Aug. 23, 2007) (acknowledging that "LexisNexis is a CRA"); *Campos v. ChoicePoint, Inc.,* 237 F.R.D. 478 (N.D. Ga. 2006) (certifying FCRA class action against a predecessor entity of Lexis as CRA); *Boris v. ChoicePoint Services, Inc.,* 249 F. Supp. 2d 851 (W.D. Ky. 2003) (Lexis predecessor entity liable as CRA). *See also* Consumer Financial Protection Bureau, "List of consumer reporting agencies," available at http://files.consumerfinance.gov/f/201604_cfpb_list-of-consumer-reporting-companies.pdf (listing Lexis as a consumer reporting agency).

3

TAC ¶¶ 11-18, and 31 and Ex. A thereto. Information about accidents is information traditionally regulated by the FCRA. *See Boris v. ChoicePoint Servs., Inc.* 249 F. Supp. 2d 851 (W.D. Ky. 2003) (FCRA claims based on reporting of information related to automobile damage upheld on post-trial review). Even a mere address is FCRA regulated information because it provides significant information about a person's mode of living. *Moreland v. CoreLogic SafeRent LLC*, No. 13-cv-470, 2013 WL 5811357, at *1, 3-4 (C.D. Cal. Oct. 25, 2013). At any rate, Lexis is a CRA and had at least some information about Mr. Pavone in its files.

When Mr. Pavone requested his Lexis file in writing, however, on May 5, 2015 and again on September 16, 2015, Lexis failed to respond in any way and provided no information to Plaintiff whatsoever. TAC ¶¶ 38, 39. Lexis has not claimed, and cannot now claim, that it had no information about Plaintiff. It simply failed to provide any information to Mr. Pavone following his two proper requests. Plaintiff has thus stated a claim under FCRA section 1681g.

  **2.** **Lexis Must Disclose All *Information* It Maintains And Sells About Consumers Upon Request, Regardless Of Source Or Creative Corporate Structure**

Defendants assert that the Crash Report it sold about Mr. Pavone is allegedly not a "consumer report" within the meaning of the FCRA, and that it therefore need not disclose the Crash Report to Mr. Pavone. Def. Mem., Dkt. No. 69 at p. 6. This argument is mistaken because it misconstrues Plaintiff's file disclosure requests, mischaracterizes his claims as plead, and misunderstands the requirements of the FCRA.

  **a.** **Plaintiff Requested Information, Not The Crash Report**

Plaintiff does not, as Defendants suggest in their motion, claim that the Crash Report delivered to Meyerkord & Meyerkord was a consumer report under the FCRA, and he did not request a copy of the Crash Report from Lexis. Plaintiff has plead that *information* from the Crash

4

Report, including his name, address, telephone number, date of birth, and driver identification number is part of Defendants' database(s) and commingled with other data. TAC ¶¶ 13, 16, 35-36. Mr. Pavone's personal information and accident history is therefore available to be included on any one of the several consumer reports Defendant Lexis sells. *See* http://www.lexisnexis.com/risk/products/insurance/motor-vehicle-records.aspx (description of Lexis's motor vehicle record products sold to determine insurance eligibility); http://www.lexisnexis.com/risk/products/ (full listing of products).

As Plaintiff plainly plead here, he requested "a complete copy of his file" from Lexis. TAC ¶ 39. Plaintiff thus sought all of the information Lexis maintained about him, regardless of the source. Even if a Crash Report is not a "consumer report," Plaintiff is still entitled to get all information in his file, and Plaintiff has plead that Lexis had a file on him that it failed to disclose upon request.

### b. Lexis Cannot Avoid Disclosure By Reclassifying Mr. Pavone's Personal Information As "Accident Data"

To the extent that Defendants argue that they need not disclose even the *information* from the Crash Report because it is a different category or type of data from traditional credit or consumer data, this argument fails as well. The FCRA specifically prohibits companies from immunizing themselves against FCRA liability by creative classification and structuring of data. In a section entitled "Corporate and technological circumvention prohibited," the FCRA provides as follows:

> The Commission shall prescribe regulations, to become effective not later than 90 days after December 4, 2003, to prevent a consumer reporting agency from circumventing or evading treatment as a consumer reporting agency described in section 1681a(p) of this title for purposes of this subchapter, including--
>
> (1) by means of a corporate reorganization or restructuring, including a merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency; or

5

> (2) by maintaining or merging public record and credit account information in a manner that is substantially equivalent to that described in paragraphs (1) and (2) of section 1681a(p) of this title, in the manner described in section 1681a(p) of this title.

15 U.S.C. § 1681x.

The Federal Trade Commission, responsible for enforcement of the FCRA, promulgated regulations almost exactly on point. *See* 12 C.F.R. § 1022.140 (the "FTC Circumvention Rule"). Section 1022.140 is titled "Prohibition Against Circumventing or Evading Treatment as a Consumer Reporting Agency" and in relevant part states:

> (a) A consumer reporting agency shall not circumvent or evade treatment as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined under section 603(p) of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(p), by any means, including, but not limited to:
>
> (1) Corporate organization, reorganization, structure, or restructuring, including merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency[.]

*Id.*

The FTC's examples of prohibited activity are particularly instructive. The examples include "(1) *Circumvention through reorganization by data type,*" which illustrates a form of data structuring that would not prevent FCRA governance:

> XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603 (p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section. […]

*Id*. The FCRA thus prohibits CRAs from evading statutory duties, including the duty to disclose all information it maintains about consumers upon request, by labeling its data differently. The FCRA does not permit Lexis to avoid disclosing this information based on any arbitrary

6

classification of data. Defendants' motion to dismiss Plaintiff's FCRA claims must therefore be denied.

### B. Plaintiff Has Properly Plead a Violation Of The Driver's Privacy Protection Act

#### 1. The Sale Of Personal Information For Advertising Purposes Serves No Law Enforcement Purpose

The impermissible DPPA purpose Plaintiff alleges in the Third Amended Complaint is Defendants' sale of Plaintiff's personal information from a motor vehicle record to Meyerkord & Meyerkord for advertising purposes. TAC ¶¶ 19-31. Defendants simply pretend that Plaintiff brings some other claim – relating to Defendants' role in preparing the Crash Report for the Schaumburg Police Department. Mr. Pavone, however, brings no such claim, and never contends that the Schaumburg Police Department lacked a permissible purpose or that Defendants could not assist the police in preparing a Crash Report. This case is about Defendants' subsequent resale of Plaintiff's personal information to Meyerkord & Meyerkord for advertising purposes. Defendants do not, and cannot, argue that such a purpose is permitted under the DPPA because the U.S. Supreme Court has already determined that it is not. *Maracich v. Spears*, 133 S. Ct. 2191 (2013).

The fact that Defendants may have been in the first instance acting properly on behalf of a law enforcement agency does not immunize their subsequent sale of Mr. Pavone's personal information to a law firm that sought to solicit him as a client. There is no such immunity in the DPPA, and Defendants cite to no authority to that effect. Moreover, Defendants were surely not aiding law enforcement when they sold a Crash Report about Mr. Pavone to Meyerkord & Meyerkord. Law enforcement could not, and did not, lawfully make that sale. Neither should Defendants.

The fact is that Defendants sell Crash Reports to law firms such as Meyerkord & Meyerkord in bulk for a fee within 24 hours of accidents because these subsequent sales are

opportunistic profit-generating transactions for Defendants based upon information from motor vehicle records to which they had access, and which they stored, while initially providing a service for law enforcement. There is no legitimate DPPA purpose for these subsequent sales of personal information, however, even if the personal information first came into Defendants' possession in a legitimate way.

Mr. Pavone has thus plead a proper DPPA claim against Defendants, and their motion to dismiss should be denied.

### 2. This Court Has Already Ruled That The "Vehicular Accident" Exclusion Does Not Apply To Mr. Pavone's Personal Information And The Transaction Here

Defendants' remaining argument for dismissal, that the information it sold about Mr. Pavone was "information on a vehicular accident" and therefore allegedly not covered by the DPPA, was previously raised by Defendant Meyerkord & Meyerkord and rejected by this Court. This argument fails now for all the same reasons as before.

As this Court has made clear, "the DPPA protects types of 'information,' not types of reports," and that the inclusion of some vehicle- or accident-related information does not remove the document as a whole from the purview of the DPPA. *Pavone v. Meyerkord & Meyerkord, LLC*, 118 F. Supp. 3d 1046, 1050 (N.D. Ill. 2015) ("The Report at issue includes information that meets the DPPA's definition of 'personal information', e.g., names, addresses, in addition to the car accident information that does not meet the definition."). As with his claim against Meyerkord & Meyerkord, Plaintiff alleges here that Lexis and iyeTek violated the DPPA by selling his *personal information* – name, address, telephone number, date of birth, and driver identification number – not information related to the accident. *Id.* at 1050 & n.2; TAC ¶ 13.

No construction of DPPA section 2722 permits "personal information" to be improperly obtained or disclosed if it happens to be co-mingled with a derivative report that also includes

8

other information.  As a practical matter, it is difficult to conceive of a motor vehicle record that contains *only* personal information and *no* other types of information.

Defendants' reading of the car accident exception would allow the exception to swallow the rule.  The privacy of personal information would be lost every time a CRA that wishes to sell information for advertising or some other impermissible use of such information could find a record that includes both personal information and some type of driving violation or driver status information.

The Seventh Circuit is likewise unconvinced by Defendants' construction of the DPPA.  In *Senne v. Village of Palatine, Illinois*, the Seventh Circuit found that disclosure of personal information co-mingled with other information may still come within the scope of the DPPA.  695 F.3d 597, 609 (7th Cir. 2012).  In *Senne*, the plaintiff received a parking ticket from the defendant village that included the plaintiff's "full name, address, driver's license number, date of birth, sex, height and weight" *as well as* "the officer's name and badge number[,] . . . the *parking offense*, . . . various information about the vehicle, including  . . . license number and vehicle identification number ("VIN")."  *Id*. at 600 (emphasis added).  It was immaterial that the parking ticket contained information beyond the "personal information" that identified the plaintiff in that case.  The Seventh Circuit held that such a disclosure could violate the DPPA.  *Id*. at 609.

Importantly, the *Senne* court also noted that "exceptions should not be read to eviscerate the rule they modify" with respect to the DPPA.  695 F.3d at 606.  Defendants' interpretation of "personal information" here does just that by allowing the "information on vehicular accidents" exception to swallow the expressly included categories of personal information.  Defendants' interpretation would lead to unintended results and undermine the privacy purposes of the DPPA.

9

*See City of Chicago v. U.S. Dep't of the Treasury*, 423 F.3d 777, 781 (7th Cir. 2005) (refusing to interpret statutes to lead to absurdities or to defeat Congressional intent).

As this Court has found, the fact that Plaintiff's personal information was co-mingled with car accident information forms no basis to dismiss his DPPA claim, and Defendants' motion must therefore be denied.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint should be denied.


DATED:  June 10, 2016                    Respectfully submitted,


By:     */s/ John Soumilas*
        One of Plaintiff's Attorneys

        John Soumilas (*admitted pro hac vice*)
        James A. Francis (*admitted pro hac vice*)
        FRANCIS & MAILMAN, P.C.
        100 S. Broad Street, Suite 1902
        Philadelphia, PA 19110
        T: (215) 735-8600
        F: (215) 940-8000
        jsoumilas@consumerlawfirm.com
        jfrancis@consumerlawfirm.com

        ZAMPARO LAW GROUP, P.C.
        Roger Zamparo, Jr.
        Jordan M. Sartell
        2300 Barrington Rd., Ste. 140
        Hoffman Estates, IL 60169
        T: (224) 875-3202
        F: (312) 276-4950
        roger@zamparolaw.com
        jordan@zamparolaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this day, the foregoing was filed electronically through the CM/ECF system with the Clerk of the Court for the United States District Court for the Northern District of Illinois, Eastern Division, and was served upon all counsel of record.

Dated: June 10, 2016  */s/ John Soumilas*
John Soumilas