IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO PAVONE, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| ) | Case No. 15 C 1539 |
| ) ) | |
| MEYERKORD & MEYERKORD, LLC, ) LEXISNEXIS RISK SOLUTIONS, INC., ) and IYETEK, LLC, ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On February 26, 2016, Plaintiff Antonio Pavone filed the present three-count Third Amended Class Action Complaint against Defendants Meyerkord & Meyerkord, LLC ("Meyerkord"), LexisNexis Risk Solutions, Inc. ("LNRS"), and iyeTek, LLC ("iyeTek") for violating the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq*. ("DPPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"). Before the Court is LNRS's and iyeTek's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part without prejudice and denies in part Defendants' motion. The Court grants Plaintiff leave to file a Fourth Amended Class Action Complaint in accordance with this ruling keeping in mind counsel's Rule 11 obligations. Plaintiff's Fourth Amended Class Action Complaint is due on or before September 6, 2016.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be

granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1397, 1949, 172 L.Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## BACKGROUND

In his Third Amended Class Action Complaint, Plaintiff alleges that on the afternoon of January 15, 2015, he was involved in an automobile accident. (R. 49, Third Am. Compl. ¶ 11.) After the accident, someone alerted the Schaumburg, Illinois Police Department and an officer responded to the accident scene. (*Id*. ¶ 12.) At the responding officer's request, Plaintiff presented his driver's license to the officer, who then transferred certain information, including Plaintiff's name, driver identification number, home address, date of birth, and gender, from his driver's license into an Illinois Traffic Crash Report ("Report") using the "iyeCrash" electronic crash reporting system. (*Id*. ¶ 13.) Plaintiff further alleges, upon information and belief, that in

2

accordance with standard policing procedures of the Schaumburg Police Department (and the other 348 Illinois policing agencies that partner with LNRS and iyeTek for crash report creation services), the responding Schaumburg police officer corroborated the information printed on Plaintiff's driver's license with Illinois Secretary of State records that were available to the officer via the computer system in his police vehicle. (*Id.* ¶ 14.) Also, Plaintiff alleges that the Report contained personal information about Plaintiff's wife and his infant son, including their names, home address, telephone numbers, dates of birth, and gender. (*Id*. ¶ 15.)

In addition, Plaintiff alleges, upon information and belief, that the Report was automatically uploaded to iyeTek's and LNRS's databases at the time of its creation. (*Id.* ¶ 16.) According to Plaintiff, iyeTek and LNRS regularly sell Reports to law firms like Meyerkord on a daily or weekly basis allowing the law firms to mail solicitation letters and advertise their legal services to persons involved in car accidents. (*Id*. ¶ 17.) Within a day of his January 15, 2015 automobile collision, Plaintiff asserts that iyeTek and LNRS, in keeping with their regular policy and practice, knowingly sold Meyerkord an unredacted copy of his Report, which contained Plaintiff's name, driver identification number, home address, telephone number, date of birth, and gender obtained from a motor vehicle record. (*Id.* ¶ 18.) Plaintiff also alleges that within 24 hours of the collision, Meyerkord sent solicitation parcels to Plaintiff, his wife, and his infant son at their home address. (*Id*. ¶ 29.) Each parcel stated that it was "ADVERTISING MATERIAL." (*Id*. ¶ 30.)

Moreover, Plaintiff contends that Meyerkord obtains Reports from iyeTek and LNRS on a daily basis in order to mail advertisements to the individuals involved in car accidents for the purpose of soliciting those individuals as new clients. (*Id*. ¶ 19.) Specifically, Meyerkord

3

obtains Illinois Traffic Crash Reports in bulk for a fee without knowing the names and addresses of the persons who are the subjects of these reports in advance of ordering them and without obtaining the prior express consent of those persons. (*Id.* ¶ 20.) Plaintiff alleges that iyeTek and LNRS sell Reports in bulk for a fee and without requiring its law firm customers to know the names and addresses of the persons who are the subjects of such reports in advance of ordering them and without requiring them to obtain the prior express consent of those persons. (*Id.* ¶ 21.) In addition, Plaintiff states, upon information and belief, that the number of persons whose Illinois Traffic Crash Reports have been obtained by Meyerkord from iyeTek and LNRS for the purposes of advertising and solicitation is in the hundreds if not thousands. (*Id.* ¶ 22.) Plaintiff also alleges, upon information and belief, that iyeTek and LNRS are aware that the law firm customers to which they sell Reports are using them for advertising and solicitation purposes and that Meyerkord provides – and iyeTek and LNRS accept – improper and untrue certifications attesting that the records would only be used for DPPA permissible purposes. (*Id.* ¶¶ 25, 27.)

## ANALYSIS

### I. DPPA Claims Against LNRS and iyeTek – Count II

In Count II, Plaintiff alleges that Defendants LNRS and iyeTek violated the DPPA, specifically 18 U.S.C. § 2722(a), (b). "The DPPA regulates the disclosure of personal information contained in the records of state motor vehicle departments (DMVs)." *Maracich v. Spears*, ___ U.S. ___, 133 S. Ct. 2191, 2195, 186 L.Ed.2d 275 (2013). The DPPA prohibits "private individuals from 'knowingly ... obtain[ing] or disclos[ing] personal information, from a motor vehicle record, for any use not permitted under Section 2721(b).'" *Graczyk v. West Pub. Co.*, 660 F.3d 275, 277 (7th Cir. 2011) (quoting 18 U.S.C. § 2722(a)); *see also Maracich*, 133

4

S.Ct. at 2199 (A person "who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." (quoting 18 U.S.C. § 2724(a)). "The DPPA, however, does not prohibit all unconsented disclosures of personal information" and "permits (and in some circumstances requires, *see* § 2721(b) (requiring disclosure in connection with vehicle safety and theft)) disclosure for certain uses." *Graczyk*, 660 F.3d at 277. Specifically, § 2721(b) permits disclosure of personal information for fourteen permissible uses, including for "use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." *Senne v. Village of Palatine, Ill.,* 784 F.3d 444, 445 (7th Cir. 2015) (quoting 18 U.S.C. § 2721(b)(1)); *see also Maracich,* 133 S. Ct. at 2195 ("Disclosure of personal information is prohibited unless for a purpose permitted by an exception listed in 1 of 14 statutory subsections."). "In section 2721(c), the DPPA regulates the resale of personal information" and that "section provides in pertinent part that, '[a]n authorized recipient of personal information ... may resell or redisclose the information only for a use permitted under subsection [2721(b) ].'" *Graczyk*, 660 F.3d at 278 (quoting 18 U.S.C. § 2721(c)).

In the their motion to dismiss, Defendants iyeTek and LNRS argue that they had a permissible use under the DPPA because it explicitly authorizes the use of personal information "by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1). Plaintiff, on the other hand, argues that although Defendants acted properly under § 2721(b)(1), Defendants violated the DPPA because

5

they resold Plaintiff's information – without Plaintiff's express consent – to the law firm Meyerkord for advertising purposes. *See* 18 U.S.C. § 2721(b)(12); *see also Maracich,* 133 S.Ct. at 2199, 2203; *Dahlstrom v. Sun-Times Media, LLC,* 777 F.3d 937, 944 (7th Cir. 2015).

As the Court discussed in its earlier ruling in this lawsuit, "Section 2721(b)(12) – the solicitation exception – [] provides that certain personal information may be disclosed [f]or bulk distribution for surveys, marketing, or solicitations if the State has obtained the express consent of the person to whom such personal information pertains." *Pavone v. Meyerkord & Meyerkord, LLC,* 118 F. Supp. 3d 1046, 1052 (N.D. Ill. 2015).[1] As the Court explained, "the solicitation exception explicitly requires obtaining express consent of the individual to whom the information pertains." *Id.*; *see also Maracich,* 133 S.Ct. at 2199 (§ 2721(b)(12) requires a driver's affirmative consent before solicitations can be sent). Viewing the well-pleaded allegations and all reasonable inferences in Plaintiff's favor, he has sufficiently alleged that iyeTek and LNRS, in keeping with their regular policy and practice, knowingly sold an unredacted copy of his accident report to the law firm Meyerkord and that this accident report contained Plaintiff's name, driver identification number, home address, telephone number, date of birth, and gender obtained from a motor vehicle record. (Third Am. Compl. ¶ 18.) Plaintiff further alleges that iyeTek and LNRS sell such reports in bulk for a fee and without requiring its law firm customers to know the names and addresses of the persons who are the subjects of such reports in advance of ordering them and without requiring them to obtain the prior express consent of those persons. (*Id*. ¶ 21.) Under these facts, Plaintiff has alleged a plausible claim for

---

[1] In their legal memoranda in support of the present motion to dismiss, Defendants iyeTek and LNRS do not acknowledge nor cite to the Court's earlier ruling in this lawsuit.

relief under the federal pleading standards. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Nevertheless, Defendants argue that the vehicular accident information at issue is expressly exempted from the DPPA's definition of "personal information," and therefore, their conduct in reselling this information was permissible. *See* 18 U.S.C. §§ 2721(a)(1), 2725(3). The DPPA defines "personal information" as:

> information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, *but does not include information on vehicular accidents, driving violations, and driver's status.*

18 U.S.C. § 2725(3) (emphasis added). The Court has already rejected this argument in its earlier ruling in this lawsuit, which controls the present motion under the law of the case doctrine. *See Kathrein v. City of Evanston, Ill.,* 752 F.3d 680, 685 (7th Cir. 2014) (a "ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it."). In particular, when addressing this argument, the Court concluded:

> Defendant asserts that the Illinois Traffic Crash Report, upon which the Pavones' claims rely, constitutes information on a vehicular accident and therefore the DPPA does not protect it. Defendant's characterization of the Report fails, however, as it attempts to broadly classify the Report as a whole rather than recognize the different types of information contained within the Report. Indeed, the DPPA protects types of "information", not types of reports.
> ....
> The Report at issue includes information that meets the DPPA's definition of "personal information", e.g., names, addresses, in addition to the car accident information that does not meet the definition.

*Pavone,* 118 F. Supp. 3d at 1050 (record citation omitted). In making this determination, the

7

Court relied upon Judge Kennelly's reasoning in the related lawsuit, *Pavone v. Law Offices of Anthony Mancini, Ltd.,* 118 F. Supp. 3d 1004, 1006 (N.D. Ill. 2015). In particular, when examining the statutory language under § 2725(3), Judge Kennelly concluded that "[b]ased on the plain language of the statute, the exclusion refers to information about the accident, not the personal information that is included in accident report. The driver's address, license plate number, and license number do not involve information about the accident, and thus they do not constitute 'information on vehicular accidents.'" *Pavone*, 118 F. Supp. 3d at 1006.[2] The Court agrees with Judge Kennelly.

Here, Defendants have failed to establish a good reason for the Court to depart from the plain meaning of § 2725(3) that excludes information about an accident from the definition of "personal information," but not the personal information included in accident reports like a driver's address. *See Dahlstrom,* 777 F.3d at 944 ("The express inclusion of these categories of information in § 2725(3) clearly demonstrates that Congress intended 'personal information' to encompass a broad[] range of personal details."); *see also Senne v. Village of Palatine, Ill.,* 695 F.3d 597, 606 (7th Cir. 2012) ("especially in light of the particular statutory structure here that sets forth such a broad prohibition against disclosure, the exceptions should not be read to eviscerate the rule they modify."). Therefore, the Court denies Defendants' motion to dismiss Count II of the Third Amended Class Action Complaint.

---

[2] When addressing questions of statutory construction, courts begin with the text of the statute. *See Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). If the statute is unambiguous and the "statutory scheme is coherent and consistent," the court's inquiry ceases. *Id.* (citations omitted); *see also United States v. Marcotte,* ___ F.3d ___, 2016 WL 3774122, at *2 (7th Cir. June 16, 2016).

## II. FCRA Claim Against LNRS – Count III

In Count III of the Third Amended Class Action Complaint, Plaintiff alleges that LNRS violated the FCRA, 15 U.S.C. § 1681g(a)(1). Pursuant to § 1681g(a)(1), "the FCRA allows the consumer to check the accuracy of the information possessed by a consumer reporting agency by requiring that '[e]very consumer reporting agency shall, upon request ... clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request." *Gillespie v. Equifax Info. Servs., L.L.C.,* 484 F.3d 938, 940-41 (7th Cir. 2007) (citation omitted). More specifically, Plaintiff alleges LNRS violated § 1681g(a)(1) because after he sent LNRS written requests for a copy of his complete file, LNRS failed to send him his complete file, including all information it assembles, such his motor vehicle records and the name of the entities to whom it sells consumer information. (Third Am. Compl. ¶¶ 37-39, 56.)

In its motion to dismiss, LNRS argues that Plaintiff's § 1681g(a)(1) claim fails as a matter of law because the FCRA applies only to "consumer reports" prepared by a "consumer reporting agency." *See Spokeo, Inc. v. Robins,* ___ U.S. ___136 S. Ct. 1540, 1545, 194 L.Ed.2d 635 (2016). The FCRA defines "consumer reporting agency" ("CRA") as "any person which, [1] for monetary fees, dues, or on a cooperative nonprofit basis, [2] regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers [3] for the purpose of furnishing consumer reports to third parties." *Tierney v. Advocate Health & Hosps. Corp.,* 797 F.3d 449, 451 (7th Cir. 2015) (citing 15 U.S.C. § 1681a(f) (numbering added)). Not only has Plaintiff alleged that LNRS is a CRA, but because LNRS holds itself out as a CRA on its website, federal courts have determined that LNRS is a CRA under the FCRA. *See Smith v. LexisNexis Risk Sols., Inc.*, No. 12 C 9972, 2014 WL

9

866413 at *1, 3 (N.D. Ill. Mar. 5, 2014); *Williams v. LexisNexis Risk Mgmt. Inc.*, No. 3:06-cv-241, 2007 WL 2439463, at *2 (E.D. Va. Aug. 23, 2007); *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478 (N.D. Ga. 2006). Therefore, the Court turns to whether the information Plaintiff seeks falls under the FCRA's definition of a "consumer report."

First, LNRS argues that although § 1681g(a)(1) requires CRAs to "clearly and accurately disclose to the consumer... [a]ll information in the consumer's file at the time of the request," the term "file" only means "information included in a consumer's report" – not all information that LNRS assembles and maintains in its databases. *See Gillespie v. Trans Union Corp.,* 482 F.3d 907, 908-10 (7th Cir. 2007). In *Gillespie*, the Seventh Circuit considered whether a CRA was required to furnish the "date of delinquency or purge date" after a consumer requested her file under § 1681g. *See id.* at 908. In concluding that the "date of delinquency or purge date" was not included in the definition of "file" under § 1681g(a), the Seventh Circuit noted that CRAs use purge dates for internal purposes and that CRAs do not usually include the purge date or date of delinquency in credit reports. *See id.* at 909.

LNRS does not address the Seventh Circuit's holding in *Gillespie* in its opening brief and does not discuss the *Gillespie* court's distinction that the CRA used the "purge date" for internal purposes in its reply brief.[3] Instead, LNRS argues that the accident reports at issue in this lawsuit are not part of a consumer's "file" under § 1681g(a) because they are not included in a consumer's credit report. Plaintiff, on the other hand, asserts that he is not arguing that the

---

[3] Arguments made for the first time in a reply brief and arguments made in footnotes are waived. *See Thulin v. Shopko Stores Operating Co., LLC,* 771 F.3d 994, 997 (7th Cir. 2014); *United States v. Vitrano,* 747 F.3d 922, 925 (7th Cir. 2014).

10

accident report was a consumer report under the FCRA, but that information from the accident report, namely, his name, driver identification number, home address, telephone number, date of birth, gender, and accident history was part of his "file" under § 1681g(a)(1). (Third Am. Compl. ¶¶ 13, 16, 35, 36.) By only making the more general argument that accident reports are not included in consumer reports, LNRS fails to address whether the information underlying the accident report falls within the definition of "file" under § 1681g(a)(1), namely, whether this information is part of Plaintiff's consumer report or whether it is information that LNRS maintains on one of its databases. *See Gillespie,* 482 F.3d at 909.

Next, LNRS argues that the FCRA does not "regulate all information on consumers" but only "regulates information that is 'used or expected to be used or collected' for one of the 'consumer purposes' set forth in the definition of a 'consumer report.'" *Ippolito v. WNS, Inc.,* 864 F.2d 440, 453 (7th Cir. 1988) (citation omitted). Indeed, "the FCRA applies only to 'consumer reports' which are used for consumer purposes; '[i]t does not apply to reports utilized for business, commercial or professional purposes.'" *McCready v. eBay, Inc.*, 453 F.3d 882, 889 (7th Cir. 2006) (quoting *Ippolito,* 864 F.2d at 452 (citations omitted) (emphasis removed)). As the Seventh Circuit explains:

> The fact that the reports are neither used nor expected to be used for a consumer purpose, however, does not necessarily mean that the report is not a consumer report. The definition of consumer report also looks at why the information contained in the report was originally collected or expected to be used. In other words, even if a report is used or expected to be used for a non-consumer purpose, it may still fall within the definition of a consumer report if it contains information that was originally collected by a consumer reporting agency with the expectation that it would be used for a consumer purpose.

*Ippolito,* 864 F.2d at 452–53. In sum, Plaintiff must allege that the information he seeks was used or expected to be used for consumer purposes, such as his eligibility for credit,

employment, or insurance. *See Spokeo,* 136 S.Ct. at 1545; 15 U.S.C. § 1681a(d)(1)(A)-(C).

In the Third Amended Class Action Complaint, Plaintiff alleges that Defendants use his information for marketing, solicitation, and advertisement purposes. (Third Am. Compl. ¶¶ 1, 17, 19, 22, 25, 26, 28-31, 51.) Plaintiff, however, does not allege that the information underlying his accident report was used or expected to be used for a specified purpose under the FCRA. *See* 15 U.S.C. § 1681a(d)(1)(A)-(C). Accordingly, Plaintiff has failed to state a plausible claim for relief under the federal pleading standards. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Court therefore grants LNRS's motion to dismiss Count III without prejudice and grants Plaintiff leave to amend his FCRA claim keeping in mind counsel's Rule 11 obligations.

## CONCLUSION

For the foregoing reasons, the Court grants in part Defendants' motion to dismiss without prejudice and denies Defendants' motion to dismiss. The Court grants Plaintiff leave to amend his FCRA claim as alleged in Count III keeping in mind counsel's Rule 11 obligations.

**Date:** August 23, 2016

                                    **ENTERED**

                                    */s/ Amy J. St. Eve*
                                    **AMY J. ST. EVE**
                                    **United States District Court Judge**