**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTONIO PAVONE, on behalf of himself, and all others similarly situated, | ) ) |
| | )   Case No. 1:15-cv-01539 |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | )   Honorable Amy J. St. Eve |
| MEYERKORD & MEYERKORD, LLC, a Missouri Limited Liability Company, LEXISNEXIS RISK SOLUTIONS, INC., a Corporation; and IYETEK, LLC, a Limited Liability Company, | ) ) ) ) ) |
| | ) |
| *Defendants.* | ) |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................ 1

II.  FACTS ....................................................................................................... 5

    A.  The Car Accident And Preparation Of The Crash Report ....................... 5

    B.  Lexis Copies, Warehouses And Sells Crash Report Data........................ 6

    C.  Sales Of Crash Reports To Law Firms With No Known Relationship To The Car Accident Victims ...................................................................... 7

    D.  Lexis's Knowledge That Its Crash Reports Are Purchased By Law Firms For Advertising Purposes............................................................... 8

    E.  Meyerkord Knowingly Purchased Crash Reports For Advertising Purposes.......... 9

    F.  The Pavone Crash Report Sales Transaction ........................................ 10

III.  ARGUMENT ........................................................................................... 11

    A.  Legal Standards Governing Class Certification.................................... 11

        1.  The Requirements of Rule 23(a)............................................... 13

            a.  Numerosity.................................................................... 13

                i.  The Meyerkord Class Is Numerous ................................. 14

                ii.  The Lexis Class Is Numerous ............................................ 14

            b.  Commonality.................................................................. 14

                i.  The Meyerkord Class Satisfies The Commonality Requirement ................................................................... 15

                ii.  The Lexis Class Satisfies The Commonality Requirement ................................................................... 15

            c.  Typicality ...................................................................... 15

                i.  The Meyerkord Class Satisfies The Typicality Requirement ................................................................... 16

                ii.  The Lexis Class Satisfies The Typicality Requirement ................................................................... 16

            d.  Adequate Representation ............................................... 17

2. The Requirements of Rule 23(b)..................................................................18

    a. Rule 23(b)(2) Injunctions....................................................................18

    b. Rule 23(b)(3) Money Damages ..........................................................19

        i. The Meyerkord Class Satisfies The Requirements Of Rule 23(b)(3) ................................................................20

        ii. The Lexis Class Satisfies The Requirements Of Rule 23(b)(3).......................................................................21

B. Appointment And Approval Of Class Counsel Is Warranted................................22

C. Plaintiff's Proposed Trial Plan.....................................................................23

IV. CONCLUSION.................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

Amchem Products, Inc. v. Windsor,
  521 U.S. 591 (1997)................................................................................................ 17

Amgen Inc. v. Conn. Retirement Plans and Trust Funds,
  ___ U.S. ___, 133 S. Ct. 1184 (2013)...................................................................... 19

Cavin v. Home Loan Ctr., Inc.,
  236 F.R.D. 387 (N.D. Ill. 2006)................................................................................ 19

Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago,
  797 F.3d 426 (7th Cir. 2015) ............................................................................ 12, 19

De La Fuente v. Stokely–Van Camp, Inc.,
  713 F.2d 225 (7th Cir.1983) .................................................................................... 16

Gillespie v. Equifax Info. Servs., LLC,
  No. 05-cv-138, 2008 WL 4614327 (N.D. Ill. 2008)................................................. 19

Gulf Oil Co. v. Barnard,
  452 U.S. 89, 99 (1981)....................................................................................... 11, 12

Haynes v. Logan Furniture Mart,
  503 F.3d 1161 (7th Cir. 1974) ................................................................................. 20

Healey v. Int'l Broth. of Elec. Workers, Local Union No. 134,
  296 F.R.D. 587 (N.D. Ill. 2013)............................................................................... 13

In re Prudential Ins. Co. Am. Sales Practice Litig.,
  148 F.3d 283 (3d Cir. 1998) .................................................................................... 20

In re Steel Antitrust Litig.,
  No. , 2015 WL 5304629 ........................................................................................... 17

Keele v. Wexler,
  149 F.3d 589 (7th Cir. 1998) ................................................................................... 15

Kleen Products LLC v. Int'l Paper Co.,
  831 F.3d 919 (7th Cir. 2016) ................................................................................... 14

Maracich v. Spears,
  133 S. Ct. 2191 (2013)............................................................................................... 1

McCabe v. Crawford & Co.,
  210 F.R.D. 631 (N.D. Ill. 2002)............................................................................... 20

Muro v. Target Corp.,
  580 F.3d 485 (7th Cir. 2009) ................................................................................... 16

Murray v. New Cingular Wireless Services, Inc.,
  232 F.R.D. 295 (N.D. Ill. 2005)............................................................................... 20

Oshana v. Coca-Cola Co.,
  472 F.3d 506 (7th Cir. 2006) ................................................................................... 16

*Pietrzycki v. Heights Tower Serv., Inc.*,
___ F. Supp. 3d ___, 2016 WL 3766344 (N.D. Ill. July 11, 2016) .............................. 14, 18, 20

*Retired Chi. Police Ass'n v. City of Chi.*,
7 F.3d 584 (7th Cir.1993) ...................................................................................... 16, 17

*Riordan v. Smith Barney*,
113 F.R.D. 60 (N.D. Ill. 1986)......................................................................................... 13

Sec'y of Labor v. Fitzsimmons,
805 F.2d 682 (7th Cir.1986) ............................................................................................ 17

*Szabo v. Bridgeport Machines, Inc.*,
249 F.3d 672 (7th Cir. 2001) ........................................................................................... 12

Uhl v. Thoroughbred Tech. & Telecomms., Inc.,
309 F.3d 978, 985 (7th Cir. 2002) ................................................................................... 11

*Wachtel v. Guardian Life Insurance Co. of America*,
453 F.3d 179 (3d Cir. 2006) ............................................................................................ 23

Williams v. Chartwell Fin. Servs., Ltd.,
204 F.3d 748 (7th Cir. 2000) ........................................................................................... 11

**Statutes**

18 U.S.C. § 2722 ...................................................................................................................... 1

18 U.S.C. § 2724 .................................................................................................................. 4, 18

18 U.S.C. §§ 2721 ........................................................................................................... *passim*

**Other Authorities**

2 H. Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) .................................................... 12

**Rules**

Fed. R. Civ. P. 23(b) ...................................................................................................... *passim*

Fed. R. Civ. P. 23(b)(a).............................................................................................................. 4

Fed. R. Civ. P. 23(c)(1)(B) ...................................................................................................... 23

Fed. R. Civ. P. 23(c)(1)(C) ...................................................................................................... 12

Fed. R. Civ. P. 23(g)(1)............................................................................................................ 22

Fed. R. Civ. P. 23(g)(1)(C)(i) .................................................................................................. 22

Fed. R. Civ. P. 23(g)(2)(B) ...................................................................................................... 22

## I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 23, Plaintiff Antonio Pavone ("Plaintiff" or "Mr. Pavone") respectfully requests that this Court certify two classes in this matter, one against Defendant Meyerkord & Meyerkord, LLC ("Meyerkord") and a second against Defendants LexisNexis Risk Solutions, Inc. and iyeTek LLC (collectively "Lexis").[1]

This case is brought under the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 *et seq.* (the "DPPA"). The DPPA protects against the improper disclosure and use of personal information (such as names and addresses) from motor vehicle records. A person's driver's license, for example, reflecting his/her home address cannot be accessible to strangers with no lawful purpose for obtaining such information. Disclosing, obtaining or using names and addresses from any motor vehicle record in order for attorneys to send solicitations to potential clients is unlawful under the DPPA. 18 U.S.C. § 2722. The U.S. Supreme Court has so held. *Maracich v. Spears*, 133 S. Ct. 2191, 2195-96 (2013). Plaintiff claims that both Meyerkord and Lexis violated the DPPA in this respect.

Specifically, Plaintiff claims that Meyerkord unlawfully obtained and used DPPA-protected personal information from motor vehicle records in order to solicit car accident victims and to advertise its personal injury legal services to them. Lexis knowingly disclosed such DPPA-protected personal information from motor vehicle records to Meyerkord and other law firms who used that information for advertising purposes. Both obtaining and disclosing of DPPA-protected personal information violates the DPPA at 18 U.S.C. § 2722, which provides:

---

[1]     Plaintiff and Lexis have stipulated that LexisNexis Claims Solutions, Inc. will bear any liability against iyeTek in this matter. *See* Dkt. No. 118. Plaintiff sued iyeTek and its successor, Lexis Nexis Risk Solutions Inc., because a lexisnexis.com press release provided that on May 22, 2014 "LexisNexis® *Risk Solutions* . .. announced the acquisition of Kalamazoo, Mich.-based iyeTek." http://www.lexisnexis.com/risk/newsevents/press-release.aspx?Id=140076642573925 (emphasis added). Discovery, however, revealed that iyeTek was actually acquired by a different Lexis entity, LexisNexis *Claims Solutions, Inc.*, and eventually became integrated into that business. Dk. 118. This motion will collectively reference iyeTek, LLC and its successor in interest as "Lexis."

(a)  Procurement for Unlawful Purpose. — It shall be unlawful for any person knowingly to <u>obtain or disclose</u> personal information, from a motor vehicle record, for any use not permitted under section 2721 (b) of this title.

18 U.S.C. § 2722(a) (emphasis added).   As noted above, solicitation and advertising is not a permitted use under the DPPA.  Both Defendants moved to dismiss Plaintiff's DPPA claims earlier in this litigation, but this Court rejected Defendants' arguments and denied their motions.  Dks. 22, 32 and 91.

Discovery has left no question here that Meyerkord knowingly obtained Mr. Pavone's name and address and class member names and addresses (and other information) for the purposes of solicitation and advertisement.   Meyerkord obtained this information from Lexis in the form of "crash reports" approximately ███ times and from one other supplier approximately ███ other times.  The process was the same.  Meyerkord used supplier websites – referred to as "web portals" – which allowed it to search for police-prepared reports of car accidents reflecting severe injuries within specific geographic territories and date ranges.  It conducted these searches as soon as it could after crash reports became available, usually within a day of the car accident.  Meyerkord never had the names and addresses of these car accident victims before it obtained their crash reports.  Meyerkord used the DPPA-protected personal information (names and addresses) to promptly send these car drivers solicitation and advertising material in case they wanted to pursue personal injury lawsuits.

Discovery has also revealed that Lexis knowingly made the crash report data available for purchase to law firms such as Meyerkord and others. ████████████████████ ████████████████████████████████████████████████

Lexis also knew that such disclosure was unlawful.   Nevertheless, Lexis facilitated this digital version of ambulance chasing.  The disclosures that comprise the class here followed the same

pattern: the crash reports were obtained within 24 hours of when the crash report was complete and thus became available for purchase, they were purchased by law firms, and these law firms did not have the names and address of the accident victims or a crash report number. Indeed, until recently, Lexis allowed law firms to obtain crash reports, like Meyerkord did, using only a geographic region, a date (or date range), and the severity of the injury, with no limit on the number of reports a law firm could purchase at any given time. Lexis turned a blind eye to unlawful disclosure in order to maximize its sales of crash reports.

Discovery has revealed two groups of persons with claims well-suited for class treatment. The Meyerkord class consists of approximately 7,123 persons to whom the Meyerkord personal injury law firm sent advertising material after it learned of their names and addresses through an improperly obtained and used Illinois crash report. Plaintiff proposed the following state-wide class definition for the Meyerkord class:

> All natural persons with an address in the state of Illinois who were the subjects of an Illinois Traffic Crash Report, to whom, within four years prior to the filing of this action and extending through the resolution of this action, Defendant Meyerkord & Meyerkord, LLC sent correspondence marked "ADVERTISING MATERIAL" substantially similar in form to the correspondence it sent to Plaintiff Antonio Pavone, but the class excludes non-drivers identified on the Illinois Traffic Crash Reports, any officers of Defendants, as well as the lawyers in this case and the judge assigned to this case.

Plaintiff also seeks to certify a class of approximately ▮▮▮ persons against Defendant Lexis for certain sales of car accident crash reports to law firms such as Meyerkord. Plaintiff proposes the following nationwide class definition for the Lexis class:

> All persons residing within the United States and its Territories about whom, within four years prior to the filing of this action and extending through the resolution of this action, Defendant Lexis sold a crash report to a law firm within 24 hours of the time the report became available for purchase on Defendant's e-commence web-portal, but excluded from the class are the subjects of those reports obtained by any law firm using the name and address of the subject or the subject's accident report number, and also excluded from the class are any officers of Defendants, as well as

the lawyers in this case and the judge assigned to this case.

The proposed classes here are numerous and easily ascertainable, since Defendants know the names and addresses of the affected car accident victims, and since Lexis maintains data about who purchased crash reports, when the sales were made, and through what web portal means.[2]  As will be discussed below, Mr. Pavone's claim is entirely typical and the common issues for his section 2722 DPPA claim will predominate.  Moreover, since the DPPA provides for equitable relief and also for fixed liquidated damages of $2,500 per violation, 18 U.S.C. § 2724, a class action is the superior method of adjudicating this invasion of privacy case.  As will be discussed below, this case is suitable for class treatment under Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

Plaintiff seeks: (1) an injunction against Meyerkord, preventing that firm from obtaining any crash report unless it can certify that it represents the accident victim who is the subject of the crash report;  (2) an injunction against Lexis, preventing it from selling any crash report to any law firm unless that firm can certify that it represents the accident victim who is the subject of the crash report or is defending a lawsuit already brought by that car accident victim; (3) compensation in the form of $2,500 in liquidated damages for every class member against every defendant who violated that class member's DPPA rights; (4) punitive damages; as well as (5) reasonable attorneys' fees and litigation costs as provided by 18 U.S.C. § 2724.

## II.    FACTS

### A.   The Car Accident And Preparation Of The Crash Report

At approximately 3:52 p.m. on Thursday, January 15, 2015, Mr. Antonio Pavone and his family were involved in an automobile collision.   Ex. 1, the 1-15-15 Crash Report (redacted).

---

[2]      There is some small overlap of the two classes (of approximately ▮ people) but this overlap poses no special problem in this case since "any person" who violates 18 U.S.C. § 2722 is liable for separate liquidated damages to the affected driver.

After the collision, the local police, from the Schaumburg Police Department, were alerted and officer Alan Takei responded to the scene of the collision. *See* Ex. 1; Ex. 2, Pavone Dep. at 7:5-21.

Mr. Pavone testified that at the responding officer's request, he presented his driver's license to the officer. Ex. 2, Pavone Dep. at 9:10-15. Asking for driver's license and proof of insurance at the site of a car accident is standard police protocol and happens in "every instance" according to Officer Takei. Ex. 3, Takei Dep. at 19:12-19; 22:5-24:1.

Not surprisingly, both the Illinois Department of Transportation's ("IDOT") Division of Traffic Safety ("DTS") and also the National Highway Traffic Safety Administration ("NHTSA") confirm that it is standard police protocol for officers responding to the scenes of a car accidents to ask for drivers' licenses. Ex. 4, Model Minimum Uniform Crash Criteria at pp. 32, 38; and Ex. 5, State of Illinois Traffic Record Assessment at pp. 32-33.

Again following standard police protocol, the responding officer transferred certain information, including Mr. Pavone's name, driver identification number, home address, date of birth, and gender, from Mr. Pavone's driver's license into his cruiser's data terminal, in order to prepare an Illinois Traffic Crash Report (the "1-15-15 Crash Report"). Ex. 3, Takei Dep. at 22:5-24:1.

Crash reports are prepared for every car accident by the Schaumburg Police Department and the other 348 Illinois policing agencies that partner with Lexis for crash report creation services using Lexis's "iyeCrash" electronic crash reporting system.[3] The iyeCrash system is software that allows police to prepare crash reports in an electronic fashion. Ex. 6, Anwar Dep. at 22:13-23:19; 29:2-6; Ex. 3, Takei Dep. at 22:5-24:1.

---

[3] Complete list accessible by visiting https://ecrash.lexisnexis.com and following the "coverage" link at the top of the page.

5

Using the standard protocol, the data entered by the police officer into his or her cruiser's data terminal is corroborated with the Illinois Secretary of State records. Ex. 3, Takei Dep. at 22:5-24:1; 25:12-26:3.   Standard police training is to obtain the driver's license, use the data from the driver's license to fill out the crash report, and then "run" that data (or seek to corroborate it) through the "LEDS" system.  *Id.* at 49:2-50:5.  The LEDS system has data from the Secretary of State and State Police available to police officers in their cruisers.  *Id.* at 22:5-17.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████  Ex. 3, Takei Dep. at 25:12-26:4, 42:16-43:18, 54:23-55:16.

**B.**  ██████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████  ██████████████████████████████████████

████████████████████  ████████████████  Now, the web portal is known as

"policereports.lexisnexis.com."  *Id.* at 91:17-92:6.

████████████████████████████████████████

████████████████████████████████████████████  ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

## C.  Sales Of Crash Reports To Law Firms With No Known Relationship To The Car Accident Victims

Lexis contends that its sales of crash reports to law firms are made with the understanding that the law firms have some proper DPPA purpose for the information — because they represent the car accident victims in litigation.  *See* Ex. 6, Anwar Dep. at 86:3-17.  But some sales cannot have any such possible use and Lexis knows it.

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████  ██████████████████████████

██████████████████████████████████████████████

██████████████████████████████  A lawyer already participating in or

---

[4]  ████████████████████████████████████████████████

██████

preparing for litigation related to a specific person or accident would surely either have the name and address of the relevant persons(s), and/or the reference number of the report. Furthermore, a lawyer with a legitimate, non-advertising need for a crash report would be interested only in the specific report relevant to the case, rather than in purchasing crash reports in bulk that fit targeted criteria.[5] ███████████████████████████████████████████

████████████ reports for which the only possible purpose was the solicitation of the accident victims for legal representation.

### D. Lexis's Knowledge That Its Crash Reports Are Purchased By Law Firms For Advertising Purposes

Even prior to the incident involving Mr. Pavone, Lexis knew that law firms had been buying crash reports for advertising purposes. ██████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████ Lexis thus clearly knew how to avoid selling crash reports to attorneys for solicitation purposes ███████████████████████████████
███████████████

---

[5]    Indeed, Meyerkord's corporate representative testified the firm had retained a client but did not have a copy of the crash report, he would use the name and address to locate and purchase the report. Ex. 9, Meyerkord Dep. at 69:5-70:14.

Further, in connection with Mr. Pavone's car accident, 

Mr. Pavone's case is not a needle in a haystack. An email from Meyerkord's direct mail contractor Jedediah D. Wilson, states █████████████████████████████████ ███████████████████████████████ Ex. 9, Meyerkord Dep. at 34:6-35:11. Discovery has revealed that at least █████ sales of crash reports meet the same patterns of Lexis' sale of Mr. Pavone's crash report to Meyerkord. Ex. 12.

### E. Meyerkord Knowingly Purchased Crash Reports For Advertising Purposes

With respect to the Meyerkord law firm, there can be no question that it purchased crash reports to solicit car accident victims. Meyerkord's corporate witness admitted that the firm regularly purchased records of traffic accidents in Illinois as part of an advertising "direct mail campaign," with the specific intent of using the reports to send solicitation letters to the individuals identified in the accident records. Ex. 9, Meyerkord Dep. at 26:20-27:6; 36:25-37:8; 40:7-42:16, 47:18-48:7; 68:18-22. Meyerkord used supplier web portals which allowed it to search for crash reports fitting a certain set of criteria. *Id.* The only criteria Meyerkord used in purchasing the reports was the geographic location and the severity of the injuries resulting from the crashes. *Id.* at 43:23-44:6. It conducted these searches as soon as it could after crash reports became available, usually within a day. *Id.* at 45:6-46:2, 48:15-25. Meyerkord did not have the name or any personal information related to individuals involved in these crashes prior to obtaining the crash reports. *Id.* at 55:18-22, 70:15-23.

Meyerkord sent 7,123 solicitation letters to individuals about whom it had obtained an Illinois Traffic Crash Report through a web portal without using a name and address. Ex. 13,

Meyerkord Rog. Rep. at No. 1; Ex. 9, Meyerkord Dep. at 55:18-22, 70:15-23.  In addition to using the Lexis web portal, Meyerkord had one other web service from which it obtained reports.  Ex. 9, Meyerkord Dep. at 32:2-5.  Meyerkord obtained crash reports from Lexis ████ times.  Ex. 6, Anwar Dep. at 90:11-16.  Thus, subtracting this ████ figure from the total number of solicitations Meyerkord admits to sending, the inference is that Meyerkord obtained reports from its other supplier approximately ████ other times.  Meyerkord used the DPPA-protected personal information (names and addresses) contained on these reports to promptly send these car drivers solicitation and advertising material in case they wanted to pursue personal injury lawsuits.  *See* Ex. 1; *see also* Ex. 9, Meyerkord Dep. at 26:20-27:6; 36:25-37:8; 40:7-42:16; 47:18-48:7; 68:18-22.

### F. The Pavone Crash Report Sales Transaction

On January 16, 2015, Lexis, in keeping with its regular practice, sold to Meyerkord a copy of an Illinois Traffic Crash Report prepared on the previous afternoon.  Ex. 1.  ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████  Meyerkord did not have any of the Pavones' names or their address prior to obtaining the report.  Ex. 9, Meyerkord Dep. at 55:18-22, 61:10-22.  That same day, Meyerkord sent solicitation parcels as part of its direct mail campaign to Mr. Pavone, to his wife, and to Mr. Pavone's infant son, at Mr. Pavone's home address.  Ex. 15, Pavone Solicitation Package.  Each of the three parcels included, among other things, an unredacted copy of the crash report and correspondence clearly marked "ADVERTISING MATERIAL."  *Id.* Among other information, the crash report contained Mr. Pavone's name, driver identification

number, home address, telephone number, date of birth, and gender, information obtained from a motor vehicle record.  Ex. 1.

Upon receipt of the parcels from Meyerkord, Mr. Pavone was shocked and dismayed, very concerned that his personal information and that of his immediate family had been obtained by someone they did not know and used to solicit them for legal representation. Ex. 2, Pavone Dep. at 14:12-18, 26:9-13, 35:18-24.   At first he was concerned that he had been the victim of identity theft.  *Id.*  Mr. Pavone was also distressed by the fact that information about his infant son had been obtained by Meyerkord.  *Id.* at 35:18-24, 36:10-21.

## III.    ARGUMENT

### A.    Legal Standards Governing Class Certification

The U.S. Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice."  *Gulf Oil Co. v. Barnard*, 452 U.S. 89, 99 (1981).  For a suit to be maintained as a class action under Rule 23, plaintiff must allege facts establishing each of the four threshold requirements of subsection (a) of the Rule which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*See Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 985 (7th Cir. 2002).  Plaintiff must also allege that this action qualifies for class treatment under at least one of the subdivisions of Rule 23(b).  *See Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir. 2000).

Under Rule 23(b)(2), a class action is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P.

23(b)(2).

Under Rule 23(b)(3), a class action will be appropriate where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence. *Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015). Once a plaintiff has demonstrated a preliminary legal showing that the requirements of Rule 23 have been met, the burden of proof is upon the defendant to demonstrate otherwise. 2 H. Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ("NEWBERG") §7.22 at 70-71.

The determinations called for by Rule 23 are questions addressed to the sound discretion of the district court. *Gulf Oil Co.*, 452 U.S. at 100. A decision to grant class certification is not a final order; it may be altered or amended as the case progresses towards resolution on the merits. Fed. R. Civ. P. 23(c)(1)(C).

The district court must conduct a "rigorous analysis" of the evidence and arguments in making the class certification decision. *Chicago Teachers Union*, 797 F.3d at 433 (7th Cir. 2015). "Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The U.S. Supreme Court confirmed the Seventh Circuit's interpretation of the Rule 23 inquiry in *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551, 2552 n. 6 (2011) (stating that "[f]requently [the Rule 23] 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim ….").

12

### 1.     The Requirements of Rule 23(a)

Rule 23(a) establishes four prerequisites for the maintenance of a class action:

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

### a.     Numerosity

Rule 23 (a)(1) does not require that joinder be impossible; rather, joinder of all members is impracticable if factors such as judicial economy, ability of class members to bring individual suits, and inefficiencies of relitigating core issues indicate that individual treatment would cause procedural problems. *Healey v. Int'l Broth. of Elec. Workers, Local Union No. 134*, 296 F.R.D. 587, 593 (N.D. Ill. 2013). When the class is large, "numbers alone are dispositive" of numerosity. *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). A class action may proceed upon estimates as to the size of the proposed class. Although there is no "bright line" test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1). *Healey*, 296 F.R.D. at 592.

### i.  The Meyerkord Class Is Numerous

Here, numerosity is easily satisfied for the proposed Meyerkord class. Discovery has revealed that Meyerkord used Illinois crash report to send solicitations to over 7,100 individuals. Ex. 13 at Rog. Resp. No. 1. Although some of these solicitations may have been sent to non-drivers (*i.e.,* passengers whose driver's licenses where not checked or run through the NCIC/LEDS system) that type of information is readily apparent from the face of crash reports; and such passenger solicitations may be excluded from the class using easily ascertainable and objective criteria. The class will still number in the thousands. The numerosity element is therefore satisfied.

### ii. The Lexis Class Is Numerous

Similarly, the numerosity element of Rule 23 is satisfied here with respect to the proposed Lexis class. Lexis sold at least ███████ crash reports to law firms with 24 hours of when those reports where completed and thus made available for purchase through its web portal. Ex. 12. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ In the very rare instances ██████████████████████████████

██████████████████████████████████████████, those individuals are excluded from the proposed class by definition. The class membership will still number in the thousands, and numerosity is thus satisfied.

### b. Commonality

To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Satisfaction of the commonality requirement requires that plaintiffs demonstrate that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. at 2551. "Rule 23 does not demand that *every* issue be common" – classes are routinely certified even when there is a diversity of factual circumstances underlying individual class members' claims. *Kleen Products LLC v. Int'l Paper Co.*, 831 F.3d 919, 922 (7th Cir. 2016); *Pietrzycki v. Heights Tower Serv., Inc.*, ___ F. Supp. 3d ___, 2016 WL 3766344, at *8 (N.D. Ill. July 11, 2016).

Courts generally find a wide variety of claims may be established by common proof in cases involving standardized procedures or practices. *See, e.g., Pietrzycki*, 2016 WL 3766344, at

14

*10 (claims based upon alleged practice and course of conduct used for all class members are appropriate for class treatment). "Common nuclei of fact are typically manifest where…defendants have engaged in standardized conduct towards members of the proposed class by mailing them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (class action certified).

### i. The Meyerkord Class Satisfies The Commonality Requirement

Here, there exist core common legal issues that can be resolved through common methods of proof. All class members had their privacy violated when Meyerkord obtained their DDPA-protected personal information in order to send advertisements to their home addresses. Meyerkord always used crash reports as the source of its mailing addresses, routinely sent the crash reports as advertising material, and had no other DPPA-permitted use for class member names and addresses. Ex. 9, Meyerkord Dep. at 26:20-27:6; 36:25-37:8; 40:7-42:16; 47:18-48:7; 68:18-22, 70:15-23. The common legal question is whether this pattern of behavior violated DPPA section 2722. Common proof will be used to answer that question for the entire class. Commonality is easily satisfied in this case.

### ii. The Lexis Class Satisfies The Commonality Requirement

Community is also satisfied as to the proposed Lexis class. The common question for that class is whether Lexis knowingly violated DPPA section 2722 when is sold crash reports to law firms immediately after (within 24 hours) when they were completed, when the law firm purchasers did not have the names and addresses of the persons involved in the accident or the crash report number. What Lexis knew about solicitations being improper under the DPPA and what it did or failed to do in safeguarding DPPA-protected personal information will be common to all class members.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 596-97 (7th Cir. 1993). In general, a claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

The threshold for establishing typicality is low: "Although "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009), quoting *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)).

Here, Mr. Pavone's claim is entirely typical of the claims of all class members for both proposed classes.

### i. The Meyerkord Class Satisfies The Typicality Requirement

Mr. Pavone's claim is the same as that of every proposed Meyerkord class member. Meyerkord violated DPPA section 2722 when it obtained and used Plaintiff's DPPA-protected personal information, and that of every proposed class member, for solicitation and advertising purposes.

### ii. The Lexis Class Satisfies The Typicality Requirement

Similarly, Mr. Pavone's claim is typical of the claim of every proposed Lexis class

member.  Lexis disclosed the DPPA-protected personal information of Plaintiff and every proposed Lexis class member in the same way.  Plaintiff and every class member have the same claim under DPPA section 2722 and seek the same relief.

### d.  Adequate Representation

Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Adequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members."  *Retired Chi. Police Ass'n.,*7 F.3d at 596 (quoting *Sec'y of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986)(en banc).

Both prongs of the "adequacy" test are met here, for both proposed classes.  First, Plaintiff has retained counsel experienced in consumer litigation and class action cases to prosecute his claims and those of the classes.  The firm of Francis & Mailman, P.C. has been certified to represent classes under several consumer protection and privacy statutes by courts in multiple federal districts, and has tried class actions to verdict as well.  *See* Ex. 16.  The Zamparo Law Group, P.C. has represented consumers in many cases including DPPA cases.  *See* Ex. 17.

Furthermore, the purpose of the adequacy analysis is to identify conflicts of interest or antagonism that would implicate Plaintiff's adequacy as a class representative, and the the burden is on the party opposing certification to identify and prove that such a conflict exists.  *In re Steel Antitrust Litig.*, No. , 2015 WL 5304629, at *4 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  Plaintiff asserts there is no such conflict or antagonism of interests, and it is the burden of Defendants to prove otherwise.

17

Mr. Pavone has demonstrated his understanding of a class action, the claims in the current lawsuit, and his role as the class representative. Ex. 2, Pavone Dep. at 19:18-24, 37:7-19. There is no conflict between Plaintiff and the classes – Plaintiff shares with the classes an interest in establishing that both Defendants violated DPPA section 2722. Accordingly, Mr. Pavone adequately represents the interests of the proposed classes.

### 2. The Requirements of Rule 23(b)

In addition to meeting the prerequisites of Rule 23(a), a class action must satisfy at least one of the three conditions of subdivision (b) of Rule 23.

#### a. Rule 23(b)(2) Injunctions

Where a party seeks injunctive or declaratory relief on behalf of a class of persons (as Plaintiff does here), he or she need not satisfy Rule 23(b)(3). *Dukes*, 131 S. Ct. at 2548 (noting that "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b).") Rather, that party needs merely to show, under Rule 23(b)(2), that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R Civ. P. 23(b)(2). The "key to the (b)(2) class" is whether "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 131 S. Ct at 2557; *Pietrzycki*, 2016 WL 3766344, at *10 (certifying injunctive relief class under Rule 23(b)(2)).

Here, Plaintiff brings a claim under the DPPA which specifically allows for injunctive relief, *in addition to* liquidated damages, punitive damages and attorney's fees and costs. 18 U.S.C. § 2724(b). Plaintiff has satisfied all of the requirements of Rule 23(a), as discussed above. And Defendants have "acted or refused to act on grounds that apply generally to the class," rendering injunctive relief appropriate with respect to each class. Fed. R Civ. P. 23(b)(2).

18

Specifically, Plaintiff proposes that this Court enjoin Meyerkord from obtaining any crash report unless it can certify that it represents the accident victim who is the subject of the crash report; and further enjoin Lexis from selling any crash report to any law firm unless that firm can certify that it represents the accident victim who is the subject of the crash report or is defending a lawsuit already brought by that car accident victim.

### b. Rule 23(b)(3) Money Damages

Plaintiff also seeks certification under Rule 23(b)(3), which allows for money damages, and provides in pertinent part:

> (b)    An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (3)    the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members ….

Fed. R. Civ. P. 23(b)(3).

"Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense." *Chicago Teachers Union*, 797 F.3d at 444. The plaintiff need only show that key questions of law or fact are susceptible to common proof, but need not demonstrate that these questions will be answered on the merits in favor of the class. *Id.* (citing *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, ___ U.S. ___, 133 S. Ct. 1184, 1196 (2013)). Common issues are more likely to predominate in a class action seeking only damages fixed by statute. *See Gillespie v. Equifax Info. Servs., LLC*, No. 05-cv-138, 2008 WL 4614327, at *7 (N.D. Ill. 2008) (certifying Fair Credit Reporting Act ("FCRA") class action for statutory damages, finding that the predominant common issue was whether the defendant's standardized practice constituted a knowing or reckless disregard for statutory obligations); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392 (N.D. Ill. 2006)

19

(certifying a class under the FCRA and rejecting defendant's argument that damages were an individual issue as "a nonstarter" because the class sought only statutory damages, and class members with actual damages could opt out); *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295, 302 (N.D. Ill. 2005) (certifying a class under the FCRA and noting "since the class is requesting statutory as opposed to actual damages, the existence of individual damages is not a barrier to class certification"). DPPA fixed liquidated damages of $2,500 are analogous to FCRA statutory damages of up to $1,000.

In addition to finding the predominance of common questions, Rule 23(b)(3) also requires that the Court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The relevant factors for this analysis are: "(1) 'class members' interests in individually controlling the prosecution or defense of separate actions;' (2) 'the extent and nature of any litigation concerning the controversy already begun by or against class members;' (3) 'the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) 'the likely difficulties in managing a class action.'" *Pietrzycki*, 2016 WL3766344, at *13 (quoting Fed. R. civ. P. 23(b)(3)(A)-(D)).

Furthermore, it has been widely recognized that a class action is superior to other available methods – particularly, individual lawsuits – for the fair and efficient adjudication of a suit that affects a large number of persons injured by violations of consumer protection laws or common law. *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 645 (N.D. Ill. 2002) (citing *Haynes v. Logan Furniture Mart*, 503 F.3d 1161, 1165 (7th Cir. 1974)). *See also In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998). Consumer class actions such as the case at bar easily satisfy the superiority requirement of Rule 23.

### i.     The Meyerkord Class Satisfies The Requirements Of Rule 23(b)(3)

Here, the predominance and superiority requirements are satisfied. The core issue for each member of each class will be whether Meyerkord, in violation of DPPA section 2722, improperly obtained and used DPPA-protected personal information.  The personal information always came from crash reports; it always led to an advertisement package to be set by Meyerkord to the driver; and there was never a DPPA-permitted use for the information, which any lawyer could tell comes from a driver's license or other department of motor vehicles record.  These common factual and legal issues will thus predominate over any individual issues.

Likewise the superiority requirement is satisfied here.  Meyerkord has violated the rights of large number of geographically dispersed persons to such an extent that the cost of pursuing individual litigation to seek recovery is not feasible.  Thus, the alternatives to a class action are either no recourse for thousands of consumers, or even in the unlikely event that they all become aware of their rights and could locate counsel, a multiplicity of scattered suits resulting in the inefficient administration of litigation.  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this matter.

There is no question that this class action would be easily manageable.  This case presents no manageability difficulties that would preclude class certification.

### ii.     The Lexis Class Satisfies The Requirements Of Rule 23(b)(3)

The same analysis as above under Rule 23(b)(3) applies with equal force to the proposed Lexis class.  Plaintiff's claim against Lexis is under DDPA section 2722 for unlawful disclosure. This single claim rises or falls based upon the same common facts and arguments.  ███

██████████████████████████████████████████████████████████

21

███████████████████████████████████████████. And Lexis knew that using crash reports for solicitation purposes was improper.

Nevertheless, for the proposed class and period in question, Lexis sold crash reports immediately after a car accident to law firms ███████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████. Common sense dictates that these sales were made to firms which wished to solicit injured persons to bring personal injury lawsuits. The common factual and legal issues here will predominate.

Further, as in the case of the proposed Meyerkord class, a class action is the superior method of vindicating the rights of thousands of geographically dispersed persons. DPPA liquidated damages are fixed at $2,500 and the cost of pursuing individual litigation to seek recovery against a well-financed adversary is not feasible for most drivers here. The alternative to a class action is no relief at all. Again, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**B.    Appointment And Approval Of Class Counsel Is Warranted**

As previously addressed above, Plaintiff has chosen counsel with substantial experience in handling consumer class actions. Plaintiff submits that his counsel should be designated as Class Counsel.[6]

---

[6]    Under Rule 23(g)(1), the ultimate question is whether the counsel under consideration will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1). If there is only one applicant for the appointment, then the Court need only determine whether that applicant meets the minimum qualifications set forth in Rule 23(g). Fed. R. Civ. P. 23(g)(2)(B). The Court's considerations include counsel's investigation of the underlying claims, counsel's experience in handling class actions and claims of the type asserted in this case, counsel's knowledge of the applicable law, and counsel's resources for representing the class. Fed. R. Civ. P. 23(g)(1)(C)(i)

C.    **Plaintiff's Proposed Trial Plan**

Some courts have indicated that it is "an advisable practice within the class action arena" for counsel to present a trial plan at the certification stage, although one is not required.  *See Wachtel v. Guardian Life Insurance Co. of America*, 453 F.3d 179, 188, n. 7 (3d Cir. 2006); *see* Fed. R. Civ. P. 23(c)(1)(B). *See also Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 905 (7th Cir. 2012) (citing *Wachtel* and noting the Federal Rule's "apparent move towards the creation of voluntary trial plans."), *vacated for rehearing on other grounds*, 133 S. Ct. 1722 (2013).   Although a trial should not be overly-complicated in this matter,  Plaintiff proposes the following trial plan for this Court's consideration:

1.    Plaintiff Antonio Pavone will present his individual case.

2.    Unless a directed verdict is appropriate at the close of Plaintiff's individual presentation, his individual case will be presented to the jury for determination.

3.    Plaintiff's cause of action is for violation of a discrete section of the DPPA.

4.    The jury will be asked to determine whether Meyerkord impermissibly obtained or used Plaintiff's personal information from a motor vehicle record.

5.    The jury will also be asked to determine whether Lexis impermissibly disclosed Plaintiff's personal information from a motor vehicle record.

6.    If the jury returns a verdict against Plaintiff, the trial will end and judgment against Plaintiff and the class will be entered. If the jury finds for Plaintiff, the Court can render a judgment for the class based on the jury findings.

7.    Final judgment will be based upon the jury verdict.

As shown by the above, trial of this class action will be relatively straightforward.  The practice at issue is common to all members of the classes.  A jury's review of that practice will

result in a determination whether or not Meyerkord and/or Lexis violated the DPPA. Judgment can then be entered based on that verdict.

IV.     **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant this motion and enter the proposed order submitted herewith.

DATED:    October 31, 2016                    Respectfully submitted,

By:     _John Soumilas_
James A. Francis *(pro hac vice)*
John Soumilas *(pro hac vice)*
Lauren KW Brennan *(pro hac vice)*
FRANCIS & MAILMAN, P.C.
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600(t)
(215) 940-8000(f)

Roger Zamparo, Jr.
ZAMPARO LAW GROUP, P.C.
1600 Golf Road, Suite 1200
Rolling Meadows, IL 60008-4229
T. (224) 875-3202
F. (312) 276-4950
roger@zamparolaw.com

*Attorneys for Plaintiff and Classes*

24

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this day, the foregoing was filed electronically through the CM/ECF system with the Clerk of the Court for the United States District Court for the Northern District of Illinois, Eastern Division, and was served upon all counsel of record.


Dated:  October 31, 2016                                      <u>*/s/John Soumilas.*          </u>
                                                                             John Soumilas