**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTONIO PAVONE, <br><br> Plaintiff, <br><br> v. <br><br> MEYERKORD & MEYERKORD, LLC, LEXISNEXIS RISK SOLUTIONS INC., and IYETEK, LLC, <br><br> Defendants. | Case No. 1:15-CV-01539 <br><br> Honorable Amy J. St. Eve |

**STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE DISPUTE**

Defendants LexisNexis Claims Solutions Inc. ("LN Claims") and iyeTek, LLC ("iyeTek") (collectively, the "Defendants"), hereby set forth the following material facts as to which they contend there is no genuine dispute, and which entitle them to the entry of summary judgment against Plaintiff Antonio Pavone ("Plaintiff").

### I.      JURISDICTION, VENUE, PARTIES

1.      Plaintiff Antonio Pavone is a natural person who resides within the Northern District of Illinois. (Third Amended Complaint ["TAC"], Dkt. No. 49, ¶ 7.)

2.      Defendant Meyerkord & Meyerkord, LLC ("Meyerkord") is a Missouri Limited Liability Company with its principal place of business located at 1717 Park Avenue, St. Louis, Missouri 63104. Its principal attorneys, Geoffrey Meyerkord and Stephen Meyerkord, are licensed to practice law in the State of Illinois. (TAC ¶ 8; Meyerkord's Answer to Plaintiff's TAC, Dkt. No. 50 at ¶ 8.)

3. LN Claims is a corporation with its principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005. (S. Perlmutter Dep. Tr. 8:25–9:2.) A copy of the relevant portions of Mr. Perlmutter's deposition transcript is attached hereto as **Exhibit A**.[1]

4. IyeTek is a corporation that was acquired by LexisNexis Claims Solutions Inc. ("LN Claims") on May 21, 2014. IyeTek was subsequently merged with and into its parent, LN Claims. LN Claims is the entity who will bear liability should a judgment be entered against iyeTek in the above-captioned matter. (Dkt. No. 118.)

5. The Schaumburg, Illinois Police Department ("Schaumburg PD") is not a named defendant in this matter nor does Plaintiff allege that the Schaumburg PD did "anything wrong" with regards to the actions alleged in the Complaint. (*See generally* TAC; *see also* A. Takei Dep. Tr. 5:21–24.) A copy of the relevant portions of Mr. Takei's deposition transcript is attached hereto as **Exhibit B**.

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the case arises under the federal Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* ("DPPA"). (TAC ¶ 5.) Plaintiff's Fair Credit Reporting Act claim was dismissed by this Court on August 23, 2016. (Aug. 23, 2016 Mem. Op., Dkt. No. 91 at 12.)

7. Venue is proper pursuant to 28 U.S.C. § 1391 in that the transactions out of which this cause of action arises occurred in this district. (TAC ¶ 6.)

## II. IYETEK'S ECOMMERCE PORTAL

8. IyeTek assisted law enforcement agencies in providing the public with online access to information on vehicular accidents via its eCommerce web portal, authorizetransaction.com. (iyeTek's Resp. to Pl.'s ROG Nos. 2, 3, 5; iyeTek's Supp. Resp. to

---

[1] Each referenced exhibit is attached to the Declaration of Julie Hoffmeister, Esq.

Pl.'s ROG No. 4.) A copy of iyeTek's Responses to Plaintiff's First Set of Interrogatories is attached hereto as **Exhibit C**. A copy of iyeTek's Supplemental Responses to Plaintiff's First Set of Interrogatories is attached hereto as **Exhibit D**.

9. Specifically, the Schaumburg PD contracted with iyeTek to make information on vehicular accidents available online at the instruction and direction of the Schaumburg PD. (S. Anwar. Dep. Tr. 154:25–155:9; Oct. 29, 2014 Law Enforcement Agency Agreement at ¶ 1.4, DEF_PAVONE232–DEF_PAVONE000239 (hereinafter, "Schaumburg PD contract"); *Traffic Accident Report* Request, VILLAGE OF SCHAUMBURG, http://www.villageofschaumburg.com/depts/police/traffic_accident.htm (last visited July 18, 2017)). A copy of the relevant portions of Mr. Anwar's deposition transcript is attached hereto as **Exhibit E**. A copy of the Schaumburg PD contract is attached hereto as **Exhibit F**.

10. IyeTek acted on behalf of the Schaumburg PD in disclosing accident reports via its eCommerce web portal. (iyeTek's Resp. to Pl.'s ROG No. 2; Schaumburg PD contract at ¶ 1.)

11. IyeTek designed its web portal based on the instruction of the Schaumburg PD. (S. Anwar Dep. Tr. 128:1–9.)

12. The Schaumburg PD determined to whom an accident report could be sold and what types of search criteria were required to access accident reports. (S. Anwar Dep. Tr. 83:14–18, 130:24–131:6, 143:20–22; Feb. 2015 email exchanges at DEF_PAVONE150–DEF_PAVONE000151.) A copy of the February 2015 email exchange is attached hereto as **Exhibit G**.

13. iyeTek did not do anything different than what the law enforcement agency requested it do. (S. Anwar Dep. Tr. 128:3–5.) In other words, iyeTek "act[ed] at the pleasure of the agency." (S. Perlmutter Dep. Tr. 38:6–7.)

14. IyeTek's eCommerce web portal extended the same level of service as what a records department would have offered to the involved parties to an accident. (S. Anwar Dep. Tr. 128:6–8, 21–24.)

15. Illinois is an open record state and permits law enforcement agencies to disclose copies of accident reports for a fee not to exceed $5. (625 ILCS 5/11-416; Feb. 2015 email exchanges at DEF_PAVONE000136.)

16. Per the agency's instructions, iyeTek's web portal provided commercial account access to insurance companies, law firms, or self-insured companies. (S. Anwar. Dep. Tr. 75:22–24, 130:24–131:6.)

17. Meyerkord signed an agreement with iyeTek, known as the AuthorizeTransaction Application & Agreement. The agreement contained specific terms and conditions, including a restriction that the reports be used only to represent involved parties and a prohibition on using the reports for any marketing or solicitation purposes. (Meyerkord AuthorizeTransaction App. & Agt. at ¶ 2(i), DEF_PAVONE000070–DEF_PAVONE000076; S. Anwar Dep. Tr. 86:22–24, 164:17–19.) The Meyerkord AuthorizeTransaction Application & Agreement is attached hereto as **Exhibit H**.

18. IyeTek's eCommerce web portal contained similar terms and conditions which stated: "Use of this site for any other purpose, including commercial solicitation purposes, is strictly prohibited." ("Permitted Use" Terms and Conditions, DEF_PAVONE000001.) Every time a user downloaded an accident report from the portal, they were required to acknowledge

those terms and conditions. (S. Anwar Dep. Tr. 86:24–87:3.) The "Permitted Use" Terms and Conditions are attached hereto as **Exhibit I**.

19. Insurance companies and law firms who were using the web portal were "probably the best people who [could] decode these laws and terms and condition[s]." (S. Anwar Dep. Tr. 87:12–14.)

20. Meyerkord was a commercial account holder on iyeTek and would retrieve accident reports from iyeTek's eCommerce web portal in connection with representing a client who was involved in an accident. (Meyerkord AuthorizeTransaction App. & Agt.; Meyerkord Dep. Tr. 69:5–8.) A copy of the relevant portions of Meyerkord's deposition transcript is attached hereto as **Exhibit J.**

### III. PLAINTIFF'S JANUARY 15, 2015 ACCIDENT REPORT

21. On January 15, 2015, Plaintiff, his wife (Karen Pavone) and minor child were involved in a car accident in Schaumburg, Illinois. (TAC ¶¶ 11, 15; Pl.'s January 15, 2015 Accident Report (the "Report"), DEF_PAVONE000079–DEF_PAVONE000081.) The Report is attached hereto as **Exhibit K**.

22. Plaintiff called the Schaumburg Police Department and Officer Alan Takei responded to the accident scene. (TAC ¶ 12; Pl.'s Dep. Tr. 7:16–21; Report at 1.) The relevant portions of Plaintiff's deposition transcript are attached hereto as **Exhibit L**.

23. Karen Pavone does not have a driver's license. She only has a State I.D. Karen Pavone never provided her State I.D. to Officer Takei nor did she speak to Officer Takei. (K. Pavone Dep. Tr., Case No. 15-cv-1538 (N.D. Ill.) 11:6–18; Pl.'s Dep. Tr. 11:14–19, 57:17–20.) The relevant portions of Karen Pavone's deposition transcript are attached hereto as **Exhibit M**.

24. Plaintiff's minor child was only one and a half years old at the time of the accident. Consequently, he did not have any identification nor did he speak with Officer Takei. (K. Pavone Dep. Tr., Case No. 15-cv-1538 (N.D. Ill.) 11:1–5, 26:21–24; Pl.'s Dep. Tr. 57:21–58:1.)

25. Plaintiff verbally provided his wife's and minor child's name, date of birth, address and telephone number to Officer Takei. (Pl.'s Dep. Tr. 10:14–17, 17:17–18:11.)

26. Plaintiff provided his driver's license and insurance card to Officer Takei. (Pl.'s Dep. Tr. at 9:10–15, 10:1–5.)

27. Officer Takei then returned to his vehicle, where Plaintiff could not see what the officer was doing. (Pl.'s Dep. Tr. at 12:3–16, 41:20–23.)

28. Plaintiff has no knowledge what Officer Takei did when he was in his vehicle. (Pl.'s Dep. Tr. at 41:24–42:2.)

29. Officer Takei ultimately created an accident report. (Report at 1.)

30. Plaintiff does not know whether Officer Takei used information from Plaintiff's driver's license and/or insurance card to create the accident report. (Pl.'s Dep. Tr. at 42:22–43:1.)

31. Officer Takei "certainly do[es] not" remember Plaintiff's accident scene. (Takei Dep. Tr. at 29:3–5.)

32. Officer Takei also does not remember how he created Plaintiff's accident report and whether he used the iyeCrash system. (Takei Dep. Tr. at 40:3–8.)

33. Plaintiff's accident report was subsequently sent to iyeTek by the Schaumburg PD and made available on iyeTek's eCommerce web portal. (*See* TAC ¶ 16.)

34. On January 16, 2015, Meyerkord purchased Plaintiff's accident report from iyeTek's eCommerce web portal. (Meyerkord's Purchase of the Pavone Accident Report, DEF_PAVONE000090.) A copy of Meyerkord's Purchase of the Pavone Accident Report is attached hereto as **Exhibit N**.

35. Meyerkord subsequently sent advertising materials to Plaintiff as lawfully permitted by the Illinois Rules of Professional Conduct. (TAC ¶ 29, TAC Ex. A; ILL. RULES OF PROF'L CONDUCT R. 7.3; Joint Response Letter from Meyerkord, MK00010). A copy of Meyerkord's Joint Response Letter is attached hereto as **Exhibit O**.

36. On February 4, 2015, Roger Zamparo, Plaintiff's counsel in the present case, notified the Schaumburg PD that Plaintiff received "'solicitation letters/material" from Meyerkord. (Feb. 2015 email exchanges at DEF_PAVONE000092.)

37. On February 5, 2015, the Schaumburg PD notified iyeTek that Meyerkord sent advertising materials to Plaintiff. (Feb. 2015 email exchanges at DEF_PAVONE000091.)

38. This was the first instance in Illinois where a person complained that accident reports were being used for advertising or solicitation purposes, in violation of iyeTek's terms and conditions. (S. Anwar Dep. Tr. 123:4–9.)

39. Upon being notified of Meyerkord's use of Plaintiff's accident report, iyeTek conferred with the Schaumburg PD and then immediately terminated Meyerkord's commercial account because Meyerkord had violated iyeTek's terms and conditions that prohibited commercial solicitation. (Feb. 2015 email exchanges at DEF_PAVONE000135–DEF_PAVONE000136; S. Anwar Dep. Tr. 114:24–115:13.)

## IV. PLAINTIFF'S LACK OF DAMAGES

40. Plaintiff requests liquidated damages in the amount of $2,500 for Plaintiff and the putative class members for Defendants' alleged DPPA violations. (TAC ¶¶ 49, 52, "WHEREFORE.") Plaintiff does not request actual damages. (*Id*.; Pl.'s Resp. to ROG No. 14.) A copy of Plaintiff's Responses to Defendants' First Set of Interrogatories is attached hereto as **Exhibit P**.

41. Plaintiff does not seek out-of-pocket damages in this matter. (Pl.'s Resp. to RFA No. 14.) A copy of Plaintiff's Responses to Defendants' First Requests for Admission is attached hereto as **Exhibit Q**.

42. Plaintiff claims he suffered emotional distress, anxiety, loss of privacy and fear for the safety of his wife and infant son as a result of Defendants' actions. (TAC ¶ 40.)

43. Plaintiff has not received any medical treatment for his claimed emotional distress or anxiety. (Pl. Dep. Tr. 35:9–17; 36:4–7; 64:15–17.)

44. When asked to describe his claimed emotional distress, Plaintiff stated: "I felt that my privacy and my son's and my wife's information was used without my permission, without permission. And my son is a minor. I don't kow [sic] want my son's information being out there." (Pl.'s Dep. Tr. 35:18–24.) He further stated: "You obtained my information, used it without my permission. My information is private to me. My son's information is private to me. My wife's information is private to us. I didn't give it to you." (Pl.'s Dep. Tr. 36:10–14.)

45. Plaintiff claims that he fears for the safety of his minor child because "his information, I guess, is obtainable by anybody and I don't know if they're going to open up a credit card, rent a house, I don't know." (Pl.'s Dep. Tr. 36:16–21.)

8

46.	Plaintiff also claims that he thought he was the victim of identity theft when he received Meyerkord's advertising materials. (Pl.'s Dep. Tr. 14:12–15.) However, Plaintiff was not in fact the victim of identity theft nor has he suffered any damages. (Pl.'s Dep. Tr. 14:19–15:1.)

47.	Before filing the above-captioned case, Plaintiff initiated an insurance action related to the accident at issue and hired Roger Zamparo to handle the medical bills associated with his insurance claim. (Pl.'s Dep. Tr. 27:2–6, 28:4–10.)

48.	Plaintiff's insurance company contacted him on the basis of information it obtained from his accident report. (Pl.'s Dep. Tr. 62:1–6.)

49.	No other person or entity, besides iyeTek, Meyerkord, The Law Offices of Anthony Mancini, and Plaintiff's insurance company has contacted Plaintiff based on the information obtained from Plaintiff's accident report. (Pl.'s Dep. Tr. 62:1–11.)

50.	Plaintiff made no attempt to contact any law enforcement agency to restrict public access to his accident report. (Pl.'s Dep. Tr. 64:20–24.)

Dated: July 21, 2017					Respectfully submitted,

By: /s/ Ronald I. Raether, Jr.
Ronald I. Raether, Jr.
Admitted *Pro Hac Vice*
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone: (949) 622-2722
Facsimile: (949) 622-2739
Email: ronald.raether@troutmansanders.com

Mark C. Mao
Admitted *Pro Hac Vice*
580 California Street, Suite 1100
San Francisco, CA  94104
Telephone: (415) 477-5700
Facsimile: (415) 477-5710

Email: mark.mao@troutmansanders.com

Julie D. Hoffmeister
Admitted *Pro Hac Vice*
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1448
Facsimile: (804) 697-1339
Email: julie.hoffmeister@troutmansanders.com

William P. Pipal
Mary S. DiRago
Troutman Sanders LLP
One Wacker Drive, Suite 2905
Chicago, IL 60606
Telephone: (312) 759-1933
Email: william.pipal@troutmansanders.com
Email: molly.dirago@troutmansanders.com

*Attorneys for Defendant LexisNexis Claims Solutions Inc. and iyeTek, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the above and foregoing pleading was served on July 21, 2017 via the Court's CM/ECF system on all attorneys of record:

Roger Zamparo, Jr.
Zamparo Law Group, P.C.
2300 Barrington Road, Suite 140
Hoffman Estates, IL 60169
Telephone: (224) 875-3202
Email: roger@zamparo.com

James A. Francis
John Soumilas
Lauren KW Brennan
Francis & Mailman, P.C.
Land Title Building, 19th Floor
Philadelphia, PA 19110
Telephone: (215) 735-8600
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com
Email: lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff*

Ben Barnow
Erich P. Schork
Jeffrey D. Blake
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Email: b.barnow@barnowlaw.com
Email: e.schork@barnowlaw.com

*Attorneys for Defendant Meyerkord & Meyerkord, LLC*

By: /s/ Ronald I. Raether, Jr.
Ronald I. Raether, Jr.
Admitted *Pro Hac Vice*
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone: (949) 622-2722
Facsimile: (949) 622-2739

Email: ronald.raether@troutmansanders.com

29476863v1