# Exhibit H

# AuthorizeTransaction Application & Agreement

AuthorizeTransaction provides a web-based portal through which its Customers (as defined below) may access and receive copies of Accident crash reports (the "AuthorizeTransaction Services"). The information submitted on this AuthorizeTransaction Application and Agreement ("Agreement") will be used to determine the Customer's (as defined below) eligibility for accessing the AuthorizeTransaction Services. AuthorizeTransaction reserves the right to reject this Agreement without reason or for any reason whatsoever, without recourse against AuthorizeTransaction, or any of its employees, officers, directors, agents, affiliates, or other designees. Additionally, Customer hereby authorizes AuthorizeTransaction to independently verify the information provided herein and perform research about the individuals identified herein;

## PART 1: CUSTOMER INFORMATION

### SECTION A: COMPANY INFORMATION ("Customer")
(This section must be filled out entirely P.O. Boxes and Mail drop Addresses cannot be Used)

| Company Name (Full Legal Name) | | |
|---|---|---|
| Meyerkord & Meyerkord, LLC | | |
| Physical Address (Physical location where information will be used) | | |
| 1717 Park Ave. | | |
| City | State | Zip |
| Sy. Louis | MO | 62103 |
| Main Phone Number | Fax | Web Address |
| 314-436-9958 | 314-446-4700 | meyerkordlaw.com |

If located at the above address less than six (6) months, provide most recent prior address below:

| Physical Address | | |
|---|---|---|
| | | |
| City | State | Zip |
| – | – | – |

### SECTION B: MAIN CONTACT INFORMATION

| Last Name | First Name, Middle Initial | Email Address: |
|---|---|---|
| Meyerkord | Geoff | gsm@meyerkordlaw.com |
| Title | Telephone | Email Address for Monthly Invoices: |
| Attorney | 314-436-9958 | gsm@meyerkordlaw.com |

## PART 2: CUSTOMER PROFILE

### SECTION B: VENDOR REFERENCE RELEASE.
Please list at least one (1) current Business to Business Vendor Reference whom your company has an account with.

| Company Name | | Contact | |
|---|---|---|---|
| Scorpion Design, LLC | | Tony McGinnis | |
| Address | | | |
| 28480 Avenue Stanford Suite 100 | | | |
| City | State | | Zip |
| Valencia | CA | | 91355 |
| Phone | | Fax | |
| 661-702-0100 | | 661-752-8558 | |
| Email | | Account Number (if applicable) | |
| Tony@scorpiondesign.com | | | |

DEF_PAVONE000070

## SECTION C: BUSINESS PROFILE

☐ Publicly Traded Company    Ticker Symbol __-_____    Exchange __-_____

☐ Private Corporation    ☐ Sole Proprietor    ☐ Partnership    ☒ LLC    State of __MO__

Subsidiary    ☐ Yes    ☒ No    Parent Company _____

No. of Years in business __2010__    No. of Employees __9__

Federal Employer ID Number __████9684__ SIC Code _____

## SECTION D: INDUSTRY INFORMATION (select one)

☐ Insurance    ☒ Law Firm    ☐ Private Investigator    ☐ Healthcare    ☐ News Media
☐ Other (specify) _____

# Part 3: Terms and Condition

1. SCOPE OF SERVICES. AuthorizeTransaction agrees to provide Customer access to the AuthorizeTransaction Services, subject to the terms and conditions herein. This Agreement shall encompass any and all delivery methods provided to Customer for the AuthorizeTransaction Services, including, but not limited to, online, batch, XML, assisted searching, machine-to-machine searches, and any other means which may become available and to which AuthorizeTransaction agrees in order to provide the Services to Customer.

2. RESTRICTED LICENSE. AuthorizeTransaction hereby grants to Customer a restricted license to use the AuthorizeTransaction Services and any data contained therein, subject to the restrictions and limitations set forth below:

(i) Generally. AuthorizeTransaction hereby grants to Customer a restricted license to use the AuthorizeTransaction Services solely for Customer's own internal business purposes. Customer represents and warrants that all of Customer's use of the AuthorizeTransaction Services shall be for only legitimate business purposes, limited strictly to those purposes specified by Customer in connection with a specific information request relating to its business, and as otherwise governed by the Agreement. Use of the AuthorizeTransaction Services by Customer for any other purpose, including use for commercial solicitation purposes, is strictly prohibited. In addition, Customer shall at all times comply with the following specific restrictions. Customer shall not use the AuthorizeTransaction Services for marketing purposes or resell or broker the AuthorizeTransaction Services to any third-party, and shall not use the AuthorizeTransaction Services for personal (non-business) purposes. Customer shall not use the AuthorizeTransaction Services to provide data processing services to third-parties or evaluate data of or for third-parties. Customer agrees that it shall not create a direct link from another web site to the AuthorizeTransaction web site through which AuthorizeTransaction Services are accessed (the "Site"), and further agrees that it will not harvest, post, transmit, copy, modify, create derivative works from, or distribute anything obtained or downloaded by Customer from the Site.

Customer agrees not to upload or transmit through the Site any computer viruses, Trojan horses, worms or anything else designed to interfere with, interrupt or disrupt the normal operating procedures of the Site or its end-users. Any unauthorized modification, tampering or change of any information, or any interference with the availability of or access to the Site is strictly prohibited and may result in penalties or criminal charges. Customer agrees that it will not use any "robot", "spider" or other automatic device, program, algorithm or methodology, or any similar or equivalent manual process to access, acquire, copy, scrape, or monitor any portion of the Site, or in any way reproduce or circumvent the navigational structure or presentation of the Site, to obtain or attempt to obtain any materials or information through any means not purposefully made available through the Site. Customer agrees that it will not use any device, software or routine to interfere or attempt to interfere with the proper working of the Site or any transaction being conducted on the Site, or with any person's authorized use of this Site. Customer agrees that it will not attempt to gain unauthorized access to any portions of this Site, other accounts, computer systems or networks connected to any of AuthorizeTransaction's equipment and/or servers through hacking, password mining or other means. Customer agrees that it will not obtain or attempt to obtain, materials or information through any means not intentionally made available through this Site.

Customer agrees that, if AuthorizeTransaction determines or reasonably suspects that Customer is engaging in marketing activities, reselling, brokering or processing or evaluating data of or for third-parties, is using the AuthorizeTransaction Services for personal (non-business) purposes or is using the AuthorizeTransaction Services' information, programs, computer applications, or data contrary to the provisions of this Agreement, or is otherwise violating any provision of this Agreement, or any of the laws, regulations, or rules described herein, AuthorizeTransaction may take immediate action up to and including, without limitation, terminating the delivery of, and the license to use, the AuthorizeTransaction Services. Customer shall not access the AuthorizeTransaction Services from Internet Protocol addresses located outside of the United States and its territories without AuthorizeTransaction's prior written approval. Customer may not use the AuthorizeTransaction Services to create a competing product. Customer shall comply with all laws, regulations and rules which govern the use of the AuthorizeTransaction Services and information provided therein. AuthorizeTransaction may at any time mask or cease to provide Customer access to any AuthorizeTransaction Services or portions thereof which AuthorizeTransaction may deem, in AuthorizeTransaction's sole discretion, to be sensitive or restricted information.

(ii) DPPA Data. In the event some of the information contained in the AuthorizeTransaction Services is "personal information," as defined in the Drivers Privacy Protection Act, (18 U.S.C. § 2721 et seq.) and related state laws (collectively, the "DPPA"), and is regulated by the DPPA ("DPPA Data"). Customer shall not obtain and/or use DPPA Data through the AuthorizeTransaction Services in any manner that would violate the DPPA. Customer acknowledges and agrees that it may be

DEF_PAVONE000071

required to certify its permissible use of DPPA Data at the time it requests information in connection with certain AuthorizeTransaction Services and will recertify upon request by AuthorizeTransaction.

(iii) Social Security Numbers. Social Security Numbers may be available hereunder as part of Crash Reports and/or related data provided from certain states (five (5) such states as of this writing include Social Security Numbers as part of their data). However, Customer acknowledges that, under this Agreement, AuthorizeTransaction will not provide Social Security Numbers to Customer. Should Customer require Social Security Numbers in connection with its legal and permitted use of AuthorizeTransaction Services hereunder, Customer acknowledges and agrees that it shall be required to satisfy the AuthorizeTransaction Credentialing policies and procedures governing the provision of Social Security Numbers to AuthorizeTransaction Customers, as such policies and procedures may be modified at any time at the sole discretion of AuthorizeTransaction. In that event, please contact AuthorizeTransaction Customer Service at 1-888-949-3835 x 3 for assistance.

(iv) Copyrighted and Trademarked Materials. Customer shall not remove or obscure any trademarks, copyright notices or other notices contained on materials accessed through the AuthorizeTransaction Services.

(v) Additional Terms. Certain reports as are, or may, become available hereunder through the AuthorizeTransaction Services may require that Customer adhere to additional obligations and restrictions.

(vi) Fair Credit Reporting Act. The AuthorizeTransaction Services provided pursuant to this Agreement are not provided by "consumer reporting agencies," as that term is defined in the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) ("FCRA") and do not constitute "consumer reports," as that term is defined in the FCRA. Accordingly, the AuthorizeTransaction Services may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another purpose in connection with which a consumer report may be used under the FCRA. Further, Customer certifies that it will not use any of the information it receives through the AuthorizeTransaction Services to determine, in whole or in part an individual's eligibility for any of the following products, services or transactions: (1) credit or insurance to be used primarily for personal, family or household purposes; (2) employment purposes; (3) a license or other benefit granted by a government agency; or (4) any other product, service or transaction in connection with which a consumer report may be used under the FCRA or any similar state statute, including without limitation apartment rental, check-cashing, or the opening of a deposit or transaction account.

(vii) State Restrictions on Police Records. Customer warrants and represents that it will comply with all applicable state, federal, and international laws, statutes, ordinances and regulations regarding Customer's use of the AuthorizeTransaction Services and this Site. Further, Customer agrees that it will comply with the state-specific restrictions in regard to its access and use of such Police Records. Any unauthorized access or use of Police Records in violation of applicable state laws and statutes is strictly prohibited and may result in penalties or criminal charges.

3. SECURITY. Customer acknowledges that the information available through the AuthorizeTransaction Services may include personally identifiable information and it is Customer's obligation to keep all such accessed information confidential and secure. Accordingly, Customer shall (a) restrict access to AuthorizeTransaction Services to those employees who have a need to know as part of their official duties; (b) ensure that none of its employees shall obtain and/or use any information from the AuthorizeTransaction Services for personal reasons, or transfer any information received through the AuthorizeTransaction Services to any party except as permitted hereunder; (c) keep all user identification numbers, and related passwords, or other security measures (collectively, "User IDs") confidential and prohibit the sharing of User IDs; (d) immediately deactivate the User ID of any employee who no longer has a need to know, or for terminated employees on or prior to the date of termination; (e) in addition to any obligations as set forth in Section 2 of this Part 4 of the Agreement, Customer shall take all commercially reasonable measures to prevent unauthorized access to, or use of, the AuthorizeTransaction Services or data received therefrom, whether the same is in electronic form or hard copy, by any person or entity; (f) maintain and enforce data destruction procedures to protect the security and confidentiality of all information obtained through AuthorizeTransaction Services as it is being disposed; (g) be capable of receiving the AuthorizeTransaction Services where the same are provided utilizing "secure socket layer," or such other means of secure transmission as is deemed reasonable by AuthorizeTransaction; (h) not access and/or use the AuthorizeTransaction Services via mechanical, programmatic, robotic, scripted or other automated search means, other than through batch or machine-to-machine applications approved by AuthorizeTransaction; and (i) take all steps to protect their networks and computer environments, or those used to access the AuthorizeTransaction Services, from compromise. Customer will implement policies and procedures to prevent unauthorized use of User IDs and the AuthorizeTransaction Services and will immediately notify AuthorizeTransaction, in writing to: AuthorizeTransaction at 950 Trade Centre Way, Ste. 115, Kalamazoo, Michigan 49002 and by email to info@AuthorizeTransaction.com, and by phone at (1-888-949-3835 ext. 3), if Customer suspects, has reason to believe or confirms that a User ID or the AuthorizeTransaction Services (or data derived directly or indirectly therefrom) is or has been lost, stolen, compromised, misused or used, accessed or acquired in an unauthorized manner or by any unauthorized person, or for any purpose other than legitimate business reasons.

Customer shall remain solely liable for all costs associated therewith and shall further reimburse AuthorizeTransaction for any expenses that AuthorizeTransaction incurs due to Customer's failure to prevent such impermissible use or access of User IDs and/or the AuthorizeTransaction Services, or any actions required as a result thereof. Furthermore, in the event that the AuthorizeTransaction Services provided to the Customer include personally identifiable information (including, but not limited to, social security numbers, driver's license numbers or dates of birth), the following shall apply: Customer acknowledges that, upon unauthorized acquisition or access of or to such personally identifiable information, including but not limited to that which is due to use by an unauthorized person or due to unauthorized use (a "Security Event"), Customer shall, in compliance with law and at its own expense, notify the individuals whose information was potentially accessed or acquired that a Security Event has occurred, and shall also notify any other parties (including but not limited to regulatory entities and credit reporting agencies) as may be required in AuthorizeTransaction's reasonable discretion. Customer agrees that such notification shall not reference AuthorizeTransaction or the product through which the data was provided, nor shall AuthorizeTransaction be otherwise identified or referenced in connection with the Security Event, without AuthorizeTransaction's express written consent. Customer shall be solely responsible for any other legal or regulatory obligations which may arise under applicable law in connection with such a Security Event and shall bear all costs associated with complying with legal and regulatory obligations in connection therewith. Customer shall remain solely liable for claims that may arise from a Security Event, including, but not limited to, costs for litigation (including attorney's fees), and reimbursement sought by individuals, including but not limited to, costs for credit monitoring or allegations of loss in connection with the Security Event, and to the extent that any claims are brought against AuthorizeTransaction, shall indemnify AuthorizeTransaction from such claims. Customer shall provide samples of all proposed materials to notify consumers and any third-parties, including regulatory entities, to AuthorizeTransaction for review and approval prior to distribution. In the event of a Security Event, AuthorizeTransaction may, in its sole discretion, take immediate action, including suspension or termination of Customer's account, without further obligation or liability of any kind.

4. PERFORMANCE. AuthorizeTransaction will use commercially reasonable efforts to deliver the AuthorizeTransaction Services requested by Customer and to compile information gathered from selected public records and other sources used in the provision of the AuthorizeTransaction Services; provided, however, that the Customer accepts all information "AS IS". Customer acknowledges and agrees that AuthorizeTransaction obtains its data from third party sources, which may or may not be completely thorough and accurate, and that Customer shall not rely on AuthorizeTransaction for the accuracy or completeness of information supplied through the AuthorizeTransaction Services. Customer understands that Customer may be restricted from accessing certain AuthorizeTransaction Services which may be

otherwise available. AuthorizeTransaction reserves the right to add materials and features to, and to discontinue offering any of the materials and features that are currently a part of, the AuthorizeTransaction Services.

5. PRICING SCHEDULES. Fees applicable to the AuthorizeTransaction Services will be viewable at the time Customer places its order for each specific report. Customer shall then be charged the fee associated with that report at the time the order is placed. For Customers under a pre-payment invoice arrangement, Customer will be purchasing reports against their existing pre-payment retainer. If, upon viewing the fee associated with a particular report that Customer intends to order, Customer does not complete the transaction, Customer will not be invoiced for that incomplete transaction. Vendor reserves the right to adjust its fees at any time and at its sole discretion.

6. INTELLECTUAL PROPERTY; CONFIDENTIALITY. Customer agrees that Customer shall not reproduce, retransmit, republish, or otherwise transfer for any commercial purposes the AuthorizeTransaction Services' information, programs or computer applications. Customer acknowledges that AuthorizeTransaction (and/or its third party data providers) shall retain all right, title, and interest under applicable contractual, copyright, patent, trademark, Trade Secret and related laws in and to the AuthorizeTransaction Services and the data and information that they provide. Customer shall use such materials in a manner consistent with AuthorizeTransaction's interests and the terms and conditions herein, and shall notify AuthorizeTransaction of any threatened or actual infringement of AuthorizeTransaction's rights. Notwithstanding anything in this Agreement to the contrary, AuthorizeTransaction shall own Customer's search inquiry data used to access the AuthorizeTransaction Services (in the past or future) and may use such data for any purpose consistent with applicable federal, state and local laws, rules and regulations. Customer and AuthorizeTransaction acknowledge that they each may have access to confidential information of the disclosing party ("Disclosing Party") relating to the Disclosing Party's business including, without limitation, technical, financial, strategies and related information, computer programs, algorithms, know-how, processes, ideas, inventions (whether patentable or not), schematics, Trade Secrets (as defined below) and other information (whether written or oral), and in the case of AuthorizeTransaction's information, product information, product development plans, forecasts, data contained in AuthorizeTransaction Services, and other business information ("Confidential Information"). Confidential Information shall not include information that: (i) is or becomes (through no improper action or inaction by the Receiving Party (as defined below)) generally known to the public; (ii) was in the Receiving Party's possession or known by it prior to receipt from the Disclosing Party; (iii) was lawfully disclosed to Receiving Party by a third-party and received in good faith and without any duty of confidentiality by the Receiving Party or the third-party; or (iv) was independently developed without use of any Confidential Information of the Disclosing Party by employees of the Receiving Party who have had no access to such Confidential Information. "Trade Secret" shall be deemed to include any information which gives the Disclosing Party an advantage over competitors who do not have access to such information as well as all information that fits the definition of "trade secret". Each receiving party ("Receiving Party") agrees not to divulge any Confidential Information or information derived therefrom to any third-party and shall protect the confidentiality of the Confidential Information with the same degree of care it uses to protect the confidentiality of its own confidential information and trade secrets, but in no event less than a reasonable degree of care. Notwithstanding the foregoing, the Receiving Party may disclose Confidential Information solely to the extent required by subpoena, court order or other governmental authority, provided that the Receiving Party shall give the Disclosing party prompt written notice of such subpoena, court order or other governmental authority so as to allow the Disclosing party to have an opportunity to obtain a protective order to prohibit or restrict such disclosure at its sole cost and expense. Confidential Information disclosed pursuant to subpoena, court order or other governmental authority shall otherwise remain subject to the terms applicable to Confidential Information. Each party's obligations with respect to Confidential Information shall continue for the term of this Agreement and for a period of five (5) years thereafter, provided however, that with respect Trade Secrets, each party's obligations shall continue for so long as such Confidential Information continues to constitute a Trade Secret.

7. PAYMENT OF FEES. Customer shall be responsible for payment for all AuthorizeTransaction Services ordered by Customer or obtained through Customer's User IDs, whether or not such User ID is used by Customer or a third-party, provided access to the User ID is not the result of use by a person formerly or presently employed by AuthorizeTransaction or who obtains the User ID by or through a break-in or unauthorized access to AuthorizeTransaction's offices, premises, records, or documents.

Customer shall pay to AuthorizeTransaction the fees incurred for the use of the AuthorizeTransaction Services. Customer agrees that AuthorizeTransaction will charge fees directly to the customer's credit card.

At AuthorizeTransaction's sole discretion it may submit an electronic invoice for fees incurred for the use of the AuthorizeTransaction Services. AuthorizeTransaction must receive Customer's payments within twenty (20) days of the invoice date. Any balance not paid within the twenty (20) day timeframe will accrue interest at the rate of eighteen percent (18%) per annum. Customer's obligation to pay invoiced amounts is absolute and unconditional and not subject to any offset, defense or counterclaim. AuthorizeTransaction will assess a returned check fee of Twenty-Five Dollars ($25) or the maximum amount allowed under applicable law for any check draft payment to AuthorizeTransaction which is returned unpaid for reason of insufficient funds. If Customer's account is placed for collection with a third-party collection agency, Customer agrees to pay, in addition to the outstanding balance placed for collection, a collection fee in the amount of the greater of Twenty-Five Dollars ($25.00) or twenty five percent (25%) of the amount placed for collection.

8. TERM OF AGREEMENT. This Agreement is for services rendered and shall be in full force and effect during such periods of time during which AuthorizeTransaction is providing services for Customer (the "Term").

9. TERMINATION. Either party may terminate this Agreement at any time for any reason.

10. GOVERNING LAW. This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without effect to conflicts of law principles. Additionally, any action brought pursuant to Customer's use of the AuthorizeTransaction Services or pursuant to the terms and conditions of this Agreement shall be brought within the jurisdiction and venue of the courts of Kent County, Michigan.

11. ASSIGNMENT. The license granted pursuant to this Agreement to Customer to use the AuthorizeTransaction Services may not be assigned by Customer, in whole or in part, without the prior written consent of AuthorizeTransaction.

12. WARRANTIES/LIMITATION OF LIABILITY. Neither AuthorizeTransaction, nor its subsidiaries and affiliates, nor any third-party data provider (for purposes of indemnification, warranties, and limitations on liability, AuthorizeTransaction, its subsidiaries and affiliates, and its data providers are hereby collectively referred to as "AuthorizeTransaction") shall be liable to Customer (or to any person claiming through Customer to whom Customer may have provided data from the AuthorizeTransaction Services) for any loss or injury arising out of or caused in whole or in part by AuthorizeTransaction's acts or omissions in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the AuthorizeTransaction Services. If, notwithstanding the foregoing, liability can be imposed on AuthorizeTransaction, then Customer agrees that AuthorizeTransaction's aggregate liability for any and all losses or injuries arising out of any act or omission of AuthorizeTransaction in connection with anything to be done or furnished under this Agreement, regardless of the cause of the loss or injury, and regardless of the nature of the legal or equitable right claimed to have been violated, shall never exceed One Hundred Dollars ($100.00); and Customer covenants and promises that it

DEF_PAVONE000073

will not sue AuthorizeTransaction for an amount greater than such sum even if Customer and/or third-parties were advised of the possibility of such damages, and Customer further covenants and promises that it will not seek punitive damages in any suit against AuthorizeTransaction. AuthorizeTransaction does not make and hereby disclaims any warranty, express or implied, with respect to the AuthorizeTransaction Services. AuthorizeTransaction does not guarantee or warrant the correctness, completeness, merchantability, or fitness for a particular purpose of the AuthorizeTransaction Services or information provided therein. In no event shall AuthorizeTransaction be liable for any indirect, incidental, or consequential damages, however arising, incurred by Customer from receipt or use of information delivered hereunder or the unavailability thereof. Due to the nature of public record information, the public records and commercially available data sources used in AuthorizeTransaction Services may contain errors. Source data is sometimes reported or entered inaccurately, processed poorly or incorrectly, and is generally not free from defect. AuthorizeTransaction Services are not the source of data, nor are they a comprehensive compilation of the data. Before relying on any data, it should be independently verified.

13. INDEMNIFICATION. Customer hereby agrees to protect, indemnify, defend, and hold harmless AuthorizeTransaction from and against any and all costs, claims, demands, damages, losses, and liabilities (including attorneys' fees and costs) arising from or in any way related to (a) use of information received by Customer (or any third-party receiving such information from or through Customer) furnished by or through AuthorizeTransaction; (b) breach of any terms, conditions, representations or certifications in this Agreement; and (c) any Security Event.

AuthorizeTransaction hereby agrees to protect, indemnify, defend, and hold harmless Customer from and against any and all costs, claims, demands, damages, losses, and liabilities (including attorneys' fees and costs) arising from or in connection with any third-party claim that the AuthorizeTransaction Services or data contained therein, when used in accordance with this Agreement, infringe a United States patent or United States registered copyright, subject to the following: (i) Customer must promptly give written notice of any claim to AuthorizeTransaction; (ii) Customer must provide any assistance which AuthorizeTransaction may reasonably request for the defense of the claim (with reasonable out of pocket expenses paid by AuthorizeTransaction); and (iii) AuthorizeTransaction has the right to control the defense or settlement of the claim; provided, however, that the Customer shall have the right to participate in, but not control, any litigation for which indemnification is sought with counsel of its own choosing, at its own expense. Notwithstanding the foregoing, AuthorizeTransaction will not have any duty to indemnify, defend or hold harmless Customer with respect to any claim of infringement resulting from (1) Customer's misuse of the AuthorizeTransaction Services; (2) Customer's failure to use any corrections made available by AuthorizeTransaction; (3) Customer's use of the AuthorizeTransaction Services in combination with any product or information not provided or authorized in writing by AuthorizeTransaction; or (4) any information, direction, specification or materials provided by Customer or any third-party. If an injunction or order is issued restricting the use or distribution of any part of the AuthorizeTransaction Services, or if AuthorizeTransaction determines that any part of the AuthorizeTransaction Services is likely to become the subject of a claim of infringement or violation of any proprietary right of any third-party, AuthorizeTransaction may in its sole discretion and at its option (A) procure for Customer the right to continue using the AuthorizeTransaction Services; (B) replace or modify the AuthorizeTransaction Services so that they become non-infringing, provided such modification or replacement does not materially alter or affect the use or operation of the AuthorizeTransaction Services; or (C) terminate this Agreement and refund any fees relating to the future use of the AuthorizeTransaction Services. The foregoing remedies constitute Customer's sole and exclusive remedies and AuthorizeTransaction's entire liability with respect to infringement claims or actions.

14. SURVIVAL OF AGREEMENT. Provisions hereof related to release of claims; indemnification; use and protection of information, data and AuthorizeTransaction Services; payment for the AuthorizeTransaction Services; audit; AuthorizeTransaction's use and ownership of Customer's search inquiry data; disclaimer of warranties; security; customer data and governing law shall survive any termination of the license to use the AuthorizeTransaction Services.

15. AUDIT. Customer understands and agrees that, in order to ensure compliance with the FCRA, GLBA, DPPA, other similar state or federal laws, regulations or rules, regulatory agency requirements of this Agreement, AuthorizeTransaction's obligations under its contracts with its data providers, and AuthorizeTransaction's internal policies, AuthorizeTransaction may conduct periodic reviews of Customer's use of the AuthorizeTransaction Services and may, upon reasonable notice, audit Customer's records, processes and procedures related to Customer's use, storage and disposal of AuthorizeTransaction Services and information received therefrom. Customer agrees to cooperate fully with any and all audits and to respond to any such audit inquiry within ten (10) business days, unless an expedited response is required. Violations discovered in any review and/or audit by AuthorizeTransaction will be subject to immediate action including, but not limited to, suspension or termination of the license to use the AuthorizeTransaction Services, reactivation fees, legal action, and/or referral to federal or state regulatory agencies.

16. ATTORNEYS' FEES. The prevailing party in any action, claim or lawsuit brought pursuant to this Agreement is entitled to payment of all actual attorneys' fees and costs expended by such prevailing party in association with such action, claim or lawsuit.

17. TAXES. The charges for all AuthorizeTransaction Services are exclusive of any state, local, or otherwise applicable sales, use, or similar taxes. If any such taxes are applicable, they shall be charged to Customer's account.

18. CUSTOMER CHANGES/CREDIT REPORT. Customer shall notify AuthorizeTransaction immediately of any changes to the information on Customer's Application for the AuthorizeTransaction Services, and, if at any time Customer no longer meets AuthorizeTransaction's requirements for receiving the AuthorizeTransaction Services, AuthorizeTransaction may terminate this Agreement at its sole discretion. Customer is required to promptly notify AuthorizeTransaction of a change in ownership of Customer's company, any change in the name of Customer's company, and/or any change in the physical address of Customer's company.

19. RELATIONSHIP OF PARTIES. None of the parties shall, at any time, represent that it is the authorized agent or representative of the other.

20. CHANGE IN AGREEMENT. By receipt of the AuthorizeTransaction Services, Customer agrees to, and shall comply with, changes to the Restricted License granted Customer in Section 2 of this Part 4 of the Agreement, changes in pricing, and changes to other provisions of this Agreement as AuthorizeTransaction shall make from time to time by notice to Customer via e-mail, online "click wrap" amendments, facsimile, mail, invoice announcements, or other written notification. All e-mail notifications shall be sent to the individual named in Section "B" of Part 1 of this Agreement (Main Contact Information section), unless stated otherwise in this Agreement. AuthorizeTransaction may, at any time, impose restrictions and/or prohibitions on the Customer's use of the AuthorizeTransaction Services or certain data. Customer understands that such restrictions or changes in access may be the result of a modification in AuthorizeTransaction policy, a modification of third-party agreements, a modification in industry standards, a Security Event or a change in law or regulation, or the interpretation thereof. Upon written notification by AuthorizeTransaction of such restrictions, Customer agrees to comply with such restrictions.

21. PRIVACY PRINCIPLES. With respect to personally identifiable information regarding consumers, the parties further agree as follows: AuthorizeTransaction has adopted the "AuthorizeTransaction Data Privacy Principles" ("Principles"), which may be modified from time to time, recognizing the importance of appropriate privacy protections for consumer data, and Customer agrees that Customer (including its directors, officers, employees or agents) will comply with the Principles or Customer's own comparable privacy principles, policies, or practices. AuthorizeTransaction's Data Privacy Principles are available at http://www.authorizetransaction.com/iyetek/privacy.aspx.

DEF_PAVONE000074

22. PUBLICITY. Customer will not name AuthorizeTransaction or refer to its use of the AuthorizeTransaction Services in any press releases, advertisements, promotional or marketing materials, or make any other third-party disclosures regarding AuthorizeTransaction or Customer's use of the AuthorizeTransaction Services.

23. FORCE MAJEURE. The parties will not incur any liability to each other or to any other party on account of any loss or damage resulting from any delay or failure to perform all or any part of this Agreement (except for payment obligations) to the extent such delay or failure is caused, in whole or in part, by events, occurrences, or causes beyond the control, and without the negligence of, the parties. Such events, occurrences, or causes include, without limitation, acts of God, telecommunications outages, Internet outages, power outages, any irregularity in the announcing or posting of updated data files by the applicable agency, strikes, lockouts, riots, acts of war, floods, earthquakes, fires, and explosions.

24. ENTIRE AGREEMENT. Except as otherwise provided herein, this Agreement constitutes the final written agreement and understanding of the parties and is intended as a complete and exclusive statement of the terms of this Agreement, which shall supersede all other representations, agreements, and understandings, whether oral or written, which relate to the use of the AuthorizeTransaction Services and all matters within the scope of this Agreement. Without limiting the foregoing, the provisions related to confidentiality and exchange of information contained in this Agreement shall, with respect to the AuthorizeTransaction Services and all matters within the scope of this Agreement, supersede any separate non-disclosure agreement that is or may in the future be entered into by the parties hereto. Any new, other, or different terms supplied by the Customer beyond the terms contained herein, including those contained in purchase orders or confirmations issued by the Customer, are specifically and expressly rejected by AuthorizeTransaction unless AuthorizeTransaction agrees to them in a signed writing specifically including those new, other, or different terms. The terms contained herein shall supersede and govern in the event of a conflict between these terms and any new, other, or different terms in any other writing. This Agreement can be executed in counterparts and faxed or electronic signatures will be deemed originals.

25. MISCELLANEOUS. If any provision of this Agreement or any exhibit shall be held by a court of competent jurisdiction to be contrary to law, invalid or otherwise unenforceable, such provision shall be changed and interpreted so as to best accomplish the objectives of the original provision to the fullest extent allowed by law, and in any event the remaining provisions of this Agreement shall remain in full force and effect. The headings in this Agreement are inserted for reference and convenience only and shall not enter into the interpretation hereof.

**Part4: Billing Information**

SECTION A: Pre-Payment Authorization and Credit Card information

AuthorizeTransaction accepts MasterCard, Visa, and Discover. For security and authentication purposes, AuthorizeTransaction requires the account holder to provide the address to which the credit card company mails the monthly statement. Please provide authorization signature on final page of this Agreement. (Must be the signature of an individual whose name is on the account.) By submitting this billing information, Customer certifies that the information provided relating to this credit application is true and complete. Customer hereby grants AuthorizeTransaction permission to verify the credit information provided herein.

| Cardholder Name | | | |
|---|---|---|---|
| Jedediah D. Wilson | | | |
| Credit Card Statement Address | | | |
| 1715 East Belle Ave. | | | |
| City: Belleville | State: IL | | Zip: 62221 |
| Card Type: ☐ MasterCard | ☒ Visa | ☐ Discover | |
| Card Number: ▮▮▮▮3856 | Expiration (MM/YY): 03/17 | | Credit Card CSC/CVV Number: ▮▮▮ |

I hereby authorize AuthorizeTransaction to bill this credit card for the **pre-payment charges** for use of AuthorizeTransaction Services. Additionally, I hereby agree that, if the credit card company refuses to pay AuthorizeTransaction for such charges incurred, the Customer shall be responsible for the payment of such charges.

**Note:** This is a Pre-Pay Account, all crash reports must be purchased against funds in your retainer.

**The below signatory must be the credit card holder.**

| Credit Card Billing Signature : *[signature]* |
|---|
| Print Name : Jedediah D Wilson |
| Title : Consult |

DEF_PAVONE000075

**The below signatory is the Guarantor on the Account:**

| GUARANTOR(s): | |
|---|---|
| Signature : | *[signature]* |
| Print Name : | |
| Title : | |
| Dated (mm/dd/yy) : | |

## AUTHORIZATION AND ACCEPTANCE OF TERMS

I HEREBY CERTIFY that I am authorized to execute this Agreement on behalf of the Customer listed above and that I have direct knowledge of the facts stated above.

| CUSTOMER: | MEYERKORD & MEYERKORD, LLC |
|---|---|
| Signature : | MM |
| Print Name : | GEOFF MEYERKORD |
| Title : | ATTORNEY |
| Dated (mm/dd/yy) : | 10/31/2014 |

950 Trade Centre Way, Ste. 115
Kalamazoo, Michigan 49002
Toll Free # (888) 949-3835
Fax # (248) 786-5349
info@AuthorizeTransaction.com
www.AuthorizeTransaction.com



AMANDA FAYE JOHNSON
My Commission Expires
May 13, 2018
Lincoln County
Commission #14615210

*Amanda Faye Johnson*

DEF_PAVONE000076